The **BLACK & DECKER CORPORATION, Black & Decker, Inc., and Black & Decker (U.S.) Inc., Plaintiffs,**

v.

**AMIRRA, INC., Ziyad Abduljawad, Charles Esposito and Tashie & Associates, Inc., Defendants.**

No. 95–5108.

United States District Court, W.D. Arkansas, Fayetteville Division.

Sept. 26, 1995.

James E. Crouch, Charles L. Harwell, Cypert, Crouch, Clark & Harwell, Springdale, AR, Barry E. Deutsch, Black & Decker, Inc., Shelton, CT, Raymond P. Niro, Timothy J. Haller, Raymond P. Niro, Jr., Christopher J. Lee, Niro, Scavone, Haller & Niro, Chicago, IL, John D. Del Ponti, Black & Decker Corp., Towson, MD, for Plaintiffs.

Bradley D. Jesson, Rex M. Terry, Hardin, Jesson, Dawson & Terry, Fort Smith, AR, for Defendants.

## *MEMORANDUM OPINION*

H. FRANKLIN WATERS, Chief Judge.

This matter is currently before the court on the defendants' motion to transfer venue to the Central District of California. This case was filed on July 3, 1995. The complaint alleges causes of action for copyright infringement, unfair competition, false designation of origin and trade dress infringement under the Lanham Act, unfair competition under Arkansas common law, trademark infringement under Arkansas, New York, and Washington law, and trademark dilution under Arkansas law.

### *Background.*

Black & Decker (U.S.) Inc., is a Maryland corporation which originated, manufactures, and sells a battery-operated, flexible flashlight under the trademark "SnakeLight." Black & Decker Corporation is a Maryland corporation maintaining its principal place of business in Maryland. Black & Decker Corporation owns the Arkansas, New York, and Washington state trademarks on the general "SnakeLight" product configuration. It also has various pending applications for federal trademark registrations relating to the "SnakeLight" name and product configuration. Black & Decker, Inc., is a Delaware corporation which owns each of the copyright registrations relating to the "SnakeLight" flashlight.

Amirra, Inc., a Delaware corporation with its principal place of business in North San Diego County, California, imports and sells a flexible flashlight under the trademark "Cyclops." The "Cyclops" is manufactured in Asia, imported into the United States in California, and then shipped to wholesale customers for resale. Tashie & Associates, a Tennessee corporation with its principal place of business in Memphis, Tennessee, is the manufacturer's representative for the "Cyclops" flashlight. Ziyad Abduljawad is the president of Amirra and lives in Southern California. Charles Esposito is the inventor of the "Cyclops" flashlight. The principal customer of the "Cyclops" flashlight is Sam's Wholesale Clubs, Inc. (Sam's), which is headquartered in Arkansas. Amirra's other customer for the "Cyclops" is located in Irvine, California, in the Central District of California.

### *Requirements for Transfer.*

Defendants request the transfer of this action to the Central District of California under the provisions of 28 U.S.C. § 1404(a). Section 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In order to show that transfer is proper, the defendant must establish that (1) venue is proper in the transferor court; (2) venue is proper in the transferee court; and (3) the transfer is for the convenience of the parties and witnesses and promotes the interests of justice. *Dugan v. M. & W. Dozing & Trucking, Inc.*, 727 F.Supp. 417–18 (N.D.Ill.1989).

Defendants bear the burden of proving the alternate forum is more convenient than the one chosen by the plaintiffs. *Van Dusen v. Barrack*, 376 U.S. 612, 646, 84 S.Ct. 805, 824, 11 L.Ed.2d 945 (1964). In doing so, defendants must overcome the general principle that the plaintiffs' choice of forum should be disturbed only if the balance of convenience strongly favors the defendant. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). *See also* 15 Charles A. Wright, Arthur A. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3848 (2d ed. 1986).

Plaintiffs' choice of forum is given "great weight" and should rarely be disturbed. *Houk v. Kimberly–Clark Corp.*, 613 F.Supp. 923, 927 (W.D.Mo.1985); *Arkansas–Best Freight System, Inc. v. Youngblood*, 359

F.Supp. 1125, 1129 (W.D.Ark.1973). This is especially true where the plaintiff is a resident of the district in which he brought suit. *Houk,* 613 F.Supp. at 927. Where, as here, the plaintiffs are not residents of the forum they have chosen, the transfer of a case will generally be regarded as less inconvenient to the plaintiffs. However, the "plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." *In re ML–Lee Acquisition Fund II, L.P.,* 816 F.Supp. 973, 976 (D.Del.1993).

### Venue in the Transferee District.

 In this case, the plaintiffs argue that venue is not appropriate in the Central District of California because Tashie & Associates, Inc., is not subject to personal jurisdiction in that district. As plaintiffs correctly point out, the Supreme Court has held that questions of whether the defendants are willing to waive their defenses as to venue and jurisdiction in the transferee court are not relevant in ruling on a motion to transfer. *Hoffman v. Blaski,* 363 U.S. 335, 343–44, 80 S.Ct. 1084, 1089–90, 4 L.Ed.2d 1254 (1960). Therefore, we must first determine whether plaintiffs could have filed the instant action in the Central District of California.

According to plaintiffs, the evidence shows that Tashie is not subject to personal jurisdiction in the Central District of California. We are advised that Tashie is a Tennessee company that operates primarily, if not exclusively, in the three-state region of Arkansas, Tennessee, and Mississippi. The only customers approached by Tashie for the sale of the "Cyclops" flashlight are Wal–Mart and Sam's, both of which are headquartered in this district. Plaintiffs have provided the court with pages from the deposition of Peter Tashie that indicate Mr. Tashie had never been to California to meet Ziyad Abduljawad of Amirra until after the lawsuit was filed and he appeared for a deposition in the offices of Mr. Abduljawad's lawyers.

Plaintiffs also apprise the court of the following facts regarding Tashie: (1) Tashie has not solicited any potential customers in California; (2) Tashie has no subsidiaries or divisions in California and is not licensed to do business in California; (3) Tashie has no bank accounts, financial holdings, real estate, offices, employees, agents, telephone listing, business listings, or local records in California; and (4) Tashie did not attend any meetings related to this case in California.

The court asked for and received a reply brief from the defendants which addresses the issue of Tashie's amenability to personal jurisdiction in California. The court has been provided with the affidavit of Peter Tashie. Mr. Tashie states that Tashie has served as a manufacturer's representative for Amirra concerning the marketing and sale of the Cyclops flashlight. Tashie's job is to contact potential purchasers and obtain orders for the flashlight. Tashie is paid a commission on each flashlight it sells for Amirra.

In regard to Tashie's contacts with California, Mr. Tashie states that since March of 1995 he has had "numerous telephone conversations and exchanged correspondence with Ziyad Abduljawad, the President of Amirra, and other employees or agents of Amirra in California, concerning the Cyclops task light, its pricing, potential or actual orders for the product, and Tashie & Associates' commission for such orders." Mr. Tashie states he handled the discussions with Sam's and was able to obtain a substantial order for the "Cyclops." His sole contact at Sam's was Mr. Jim Bevis. The flashlights sold to Sam's were shipped to a Sam's distribution center in California and shipped from there to the twenty-five Sam's outlets in California. Mr. Tashie indicates that at the time he was negotiating with Sam's he knew the company had a retail presence in California but was unaware of the specific number of retail outlets in California.

The court was also provided with the affidavit of Richard Highsmith, Jr., an employee of Amirra's. In his affidavit Mr. Highsmith advises the court that the "Cyclops" has been shipped to Sam's distribution centers in sixteen different states.

California permits jurisdiction "on any basis not inconsistent with the Constitution ...

of the United States." Cal.Civ.Proc.Code § 410.10. Therefore, the state and federal limits are coextensive and jurisdiction must only comport with due process. *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1286 (9th Cir.1977).

"The test for due process is whether there are sufficient 'minimum contacts' between the nonresident defendant and the forum state so that the assertion of personal jurisdiction over the nonresident defendant is consistent with traditional notions of fair play and substantial justice." *Mountaire Feeds, Inc. v. Agro Impex, S.A.,* 677 F.2d 651, 654 (8th Cir.1982), *citing, World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

> Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there, and when maintenance of the suit does not offend traditional notions of fair play and substantial justice. In assessing the defendant's "reasonable anticipation," there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc.,* 950 F.2d 526, 528–29 (8th Cir.1991) (citations and internal quotation marks omitted).

■ The Court of Appeals for the Eighth Circuit has determined that satisfaction of the due process standard may be measured by weighing the following factors: the nature and quality of defendant's contacts with the forum state; quantity of contacts; source and connection of the cause of action with those contacts; and, to a lesser degree, the interest of the forum state in providing a forum for its residents; and the convenience of the parties. *Aftanase v. Economy Baler Co.,* 343 F.2d 187 (8th Cir.1965). The focus of the inquiry is on the relationship "among the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977).

Following the Supreme Court's decision in *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 nn. 8 & 9, 104 S.Ct. 1868, 1872 nn. 8 & 9, 80 L.Ed.2d 404 (1984) the Eighth Circuit "elaborated on the third factor (the relationship of the cause of action to the contacts), distinguishing between specific jurisdiction and general jurisdiction." *Bell Paper Box, Inc. v. U.S. Kids, Inc.,* 22 F.3d 816, 819 (8th Cir.1994) (citation omitted).

> "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state," while "[g]eneral jurisdiction ... refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose."

*Id.* at 819 (citations omitted). *See also Omeluk v. Langsten Slip & Batbyggeri A/S,* 52 F.3d 267, 270 (9th Cir.1995) (three-part test used to determine whether a given court may exercise specific jurisdiction over a nonresident defendant: (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable.).

Because Tashie has no substantial and continuous contacts with the State of California, personal jurisdiction, if it exists at all, will exist by virtue of specific rather than general jurisdiction. The question of what weight should be given to the existence of a contractual agreement with a resident of the forum state is a difficult one. Obviously the existence of a contractual relationship is highly relevant to the due process analysis. However, of more importance is the conduct of the parties and the consequences of the contractual arrangement.

■ The absence of actual physical contacts with the forum is not dispositive so long as the defendant's efforts are purposefully directed toward forum residents. *Burger*

*King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985). Additionally, it has been noted that the "use of interstate facilities, such as telephones, or mail, is a 'secondary or ancillary' factor 'and cannot alone provide the minimum contacts required by due process.'" *Bell Paper Box, Inc. v. Trans Western Polymers,* 53 F.3d 920, 923 (8th Cir.1995) (citation omitted).

Keeping these principles in mind, we turn to an examination of the parties' arguments in light of the defendants' contacts with the State of California. We agree with the defendants' contention that Tashie by purposefully entering into a marketing agreement with a California resident has established a continuing relationship substantially connected to California. This is not a case of a simple contract for the purchase or sale of goods or some other type of "one-shot" deal; rather, Tashie has agreed to market for a California resident goods that are imported into the United States via California and are shipped to customers from California. Tashie has apparently successfully procured the only major outlet for the goods. Tashie did so with the knowledge that the goods would be purchased for distribution in California and throughout the United States. We conclude Tashie would be subject to personal jurisdiction before a court in the State of California.

### Convenience of the Parties/Interests of Justice.

 Having concluded that this action "could have been brought" in the Central District of California, the dispositive issue becomes whether the transfer would serve "the convenience of [the] parties and witnesses and ... the interest of justice." 28 U.S.C. § 1404(a). Section 1404(a) gives the court discretion to rule on motions to transfer on an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen,* 376 U.S. at 622, 84 S.Ct. at 812. A motion to transfer requires the court to "weigh in the balance a number of case-specific factors." *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988).

[T]he court may consider a myriad of factors, including the convenience of the parties, the convenience of the witnesses, the availability of judicial process to compel the attendance of unwilling witnesses, the governing law, the relative ease of access to sources of proof, the possibility of delay and prejudice if a transfer is granted, and practical considerations indicating where the case can be tried more expeditiously and inexpensively.

*Houk v. Kimberly–Clark Corp.,* 613 F.Supp. 923, 927 (W.D.Mo.1985).

In support of their motion to transfer the defendants have identified the following key defense witnesses who they indicate all reside in Southern California or are subject to process from the Central District of California: (1) Ziyad Abduljawad, who lives in Southern California and participated in virtually all aspects of the design and marketing of the "Cyclops;" (2) Richard Highsmith, Jr., who lives in California and was responsible for importing, repacking, and shipping the product; (3) Bob Marino and Bill Barschdorf of Altered Anatomy FX who live in California and produced some of the parts for the early versions of the flashlight; (4) J.V. Carr & Sons, Inc., Los Angeles, California, the customs broker and freight forwarder for the flashlight; (5) Ron Talley of Executive Expressions, Ltd, Sherman Oaks, California, who created the point-of-sale display; (6) Pat Moller of Litho Sales Signature Press, Inc., Glendale, California, who helped develop and printed labels for the point-of-sale display; (7) Terry Swanson and Bill Warren of Mar–Lyn Container, Rancho Cucamonga, California, who fabricate point-of-sale displays and pack the flashlights in the displays for shipment; (8) Douglas Bjork and Jacob Filek of Concepts Engineering for Plastics, Rancho Cucamonga, California, who produced initial production tool drawings and were involved in the engineering assembly drawings; (9) Dustin DeMerritt and Russell DeHaven of Red World Communications, San Diego, California, who created the product packaging; (10) Susan Benford, San Diego County, California, who drafted the instructions that appear on the inside folded card for the flashlight; (11) John Webster of Webster and Associates, San Diego County, California, who was involved in the initial creative con-

cepts for packaging and retouched the photographs for the packaging; (12) Headline a pre-press graphics company located in Encinitas, California, that performed many of the product packaging tasks; (13) Tim Mantoani of Mantoani Photography, San Diego, California, who did the photography for the packaging; and (14) Craig Lubuse of Lubuse Graphics Etc., San Marcos, California, who created the line art for the packaging.

Defendants state there are likely only two key defense witnesses that do not live in California, Peter J. Tashie and Charles Esposito, neither of whom are subject to service of process in Arkansas. Charles Esposito, the creator of the "Cyclops" does not, to the defendants' knowledge, maintain a permanent residence in the United States and has for the last six or seven months spent much of his time in Asia working on various projects including the "Cyclops." It is defendants' belief that there is only one witness, Jim Bevis, the buyer from Sam's headquarters, that lives in the Western District of Arkansas.

Defendants also advise the court of a related action currently pending before the Central District of California. The existence of this related action, in the defendants' opinion, strongly weighs in favor of a transfer. In April of 1995, Black & Decker Corp., filed an action against International Sales & Marketing. The parties refer to this related action as the "GSL action."

The plaintiffs in the GSL action allege claims for relief for federal unfair competition and false designation of origin, trade dress infringement, common law unfair competition and trademark infringement, trademark dilution, and violation of the California Business and Professions Code in connection the sale of a competing flexible flashlight. Black & Decker applied for and obtained a temporary restraining order and preliminary injunction. The case is assigned to United States District Judge J. Spencer Letts. Since the issuance of the preliminary injunction order, Judge Letts has apparently examined the final version of the flashlight the GSL defendants intend to manufacture and has concluded it does not violate the terms of the preliminary injunction order. Defen-

dants argue that since Judge Letts has already considered and ruled on several motions he has necessarily gained "an understanding of the flashlight industry, plaintiffs' alleged intellectual property rights, and has considered the factors necessary in determining whether a competing product is likely to infringe plaintiffs' intellectual property rights."

Defendants cite the court to a number of cases which indicate litigation of related claims in the same tribunal is favored in order to avoid duplicitous litigation, attendant unnecessary expense, loss of time to courts, witnesses, and litigants, and inconsistent results. In *Continental Grain Co. v. Barge FBL–585,* 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960), the court stated:

> To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent. Moreover, such a situation is conducive to a race of diligence among litigants for a trial in the District Court each prefers.

*Id.,* 364 U.S. at 26, 80 S.Ct. at 1474.

Since the *Continental Grain* case, a number of courts have indicated that the existence of related litigation in a transferee court is a factor that strongly weighs in favor of transfer. *See e.g., Jarvis Christian College v. Exxon Corp.,* 845 F.2d 523 (5th Cir. 1988); *Coffey v. Van Dorn Iron Works,* 796 F.2d 217 (7th Cir.1986) (interests of justice may dictate transfer even if the convenience of the parties and witnesses might call for a different result); *Laughlin v. Edwards Business Machines, Inc.,* 155 F.R.D. 543 (W.D.Va.1994); *Structural Panels, Inc. v. Texas Aluminum Industries, Inc.,* 814 F.Supp. 1058 (M.D.Fla.1993) (two pending patent infringement cases). Many of the cases finding transfer appropriate in view of the pendency of related cases involved the same parties and issues.

Defendants also ask the court to consider the following factors: (1) the testimony of live witnesses will be important to this trial; (2) the relative financial strength of each of

**640**

the parties weigh in favor of the defendants; (3) defendants' primary counsel are located in California and defendants will have to pay their trial counsel's transportation and living expenses if the trial occurs in Arkansas; (4) none of the documents relevant to this case are maintained in Arkansas as neither the plaintiffs nor the defendants maintain any documents here; (5) none of the corporate entities, including the plaintiffs, have their principal places of business in Arkansas; and (6) plaintiffs' have no greater ties to this district than they do to the Central District of California.

In opposing the transfer request, plaintiffs argue that the defendants have failed to provide the court with complete and accurate information regarding the California case. They note the defendants only attached the docket sheet for the California case through July 7, 1995. Plaintiffs point out that two important events have occurred since that date. First, a notice of appeal has been filed appealing the district court's modifications of its preliminary injunction order. Second, the GSL defendants have requested leave to add six additional claims including one for a declaratory judgment of noninfringement, invalidity, and unenforceability of Black & Decker's design patent No. D 361,399. That patent is not at issue in this case. Plaintiffs also point out that the other GSL counterclaims have nothing to do with this action. Plaintiffs suggest that the transfer and consolidation of this action would result in the discovery period in this case doubling given the fact that the GSL action involves an interlocutory appeal and a patent claim.[1]

Plaintiffs also ask the court to consider the following factors: (1) the likelihood that an earlier trial on the merits would occur in this district[2]; (2) the existence of unique Arkansas state law issues[3]; (3) the plaintiffs'

choice of forum should be given deference; and (4) the most important third-party witnesses such as the Sam's personnel involved in this action are all located in this district. Plaintiffs additionally argue defendants' motion is untimely in view of the parties' agreement to expedite discovery and their self-imposed filing schedule for a preliminary injunction motion.

With respect to the location of their witnesses, plaintiffs state that the Black & Decker witnesses connected with this action are all located on the East Coast. Approximately 500 people are employed in Asheboro, North Carolina, to manufacture the "Snake-Light" flashlight. Its key business people involved with the "SnakeLight" are located in Shelton, Connecticut. The Black & Decker in-house attorneys are located primarily in Townson, Maryland. Lead counsel for plaintiffs in this case is from Chicago, Illinois. Given the location of these individuals plaintiffs contend a trial in this district would be more convenient and less expensive for Black & Decker than would be a trial in California.

Plaintiffs also point out that two of the defendants, Tashie and Exposito, are outside California. In this same vein, plaintiffs argue the defendants have misrepresented the relative financial strength of the parties given the financial backing that Mr. Abduljawad testified in deposition he had at his disposal.

### Conclusion.

The information submitted by the parties outline the burdens of the litigation on the various parties. The difficulties of litigation for the parties in this case are largely the result of the great geographic distance between the corporate headquarters of the various parties and the fact that none of the parties are headquartered in this district.

1. As defendants correctly point out, the fact that an interlocutory appeal has been filed with respect to the preliminary injunction ruling does not prevent a trial on the merits in the California action. Nor does it in anyway delay discovery.

2. Plaintiffs have attached as an exhibit the 1993 Federal Court Management Statistics. The statistics show the median time from issue to trial in civil cases in the Central District of California was 14 months. For the Western District of

Arkansas, the median time from issue to trial in civil cases was 11 months.

3. As defendants point out, plaintiffs in making this argument fail to mention or take into consideration the fact that this case also involves issues of New York and Washington law. Presumably, plaintiffs believe it would be better for this court to handle the case because it has some familiarity with the laws of one of the three states under which plaintiffs are asserting claims.

Clearly neither this forum nor the California forum can fully alleviate the inconvenience to the parties and the witnesses.

After carefully considering all factors advanced by the parties, we conclude transfer to the Central District of California is appropriate. In the court's view, the pendency of the related action in the Central District of California when considered in conjunction with the location of the defendants and the absence of the presence of **any party** in Arkansas tips the scales in favor of a transfer. In short, the court believes the transfer will promote the interests of justice and the convenience of the parties and the witnesses.