**DATATREASURY CORPORATION**
**Plaintiff,**

v.

**FIRST DATA CORPORATION,**
**et al. Defendants.**

**No. 3–02–CV–2429–K.**

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 7, 2003.

Michael W. Shore, Esq., Alfonso G. Chan, Esq., Kenneth Shore, Esq., Shore Deary, Joe Kendall, Esq., Provost Umphrey Law Firm, Dallas, for Plaintiff.

James P. Bradley, Esq., Li Chen, Esq., Sidley Austin Brown & Wood, Dallas, for Defendants.

## MEMORANDUM OPINION AND ORDER

KAPLAN, United States Magistrate Judge.

Defendants First Data Corporation, First Data Merchant Services Corporation, and TeleCheck Services, Inc. d/b/a Tele-Check International, Inc. ("First Data Defendants") have filed a motion to transfer this patent infringement action to the Texarkana Division of the Eastern District of Texas. For the reasons stated herein, the motion is granted.

### I.

Plaintiff DataTreasury Corporation is the assignee of two utility patents for a system of remote data acquisition and centralized processing and storage known as the "DataTreasury.TM.System." (Plf. First Am. Compl. at 2–3, ¶¶ 9 & 10). Simply stated, these inventions process paper and electronic receipts from a variety of sources, including credit card sales, automated teller transactions, consumer purchases, and business expense reports. The data is retrieved at remote locations, encrypted, and transmitted to a central location in a secure manner where it is transformed to a usable form. *See generally,* U.S. Patent No. 5,910,988 (issued Jun. 8, 1999) ("the '988 Patent") *and* U.S. Patent No. 6,032,137 (issued Feb. 29, 2000) ("the '137 Patent").

On May 2, 2002, plaintiff filed separate lawsuits in the Texarkana Division of the Eastern District of Texas against Ingenico S.A. d/b/a Groupe Ingenico and the First Data Defendants alleging infringement of the '988 and '137 Patents. *DataTreasury Corp. v. First Data Corp., et al.,* No. 5–02–CV–094; *DataTreasury Corp. v. Ingenico S.A. d/b/a Groupe Ingenico, et al.,* No. 5–02–CV–095. Another infringement action involving the same patents was filed in Texarkana federal court against J.P. Morgan Chase & Co. and others on June 5,

2002. *DataTreasury Corp. v. J.P. Morgan Chase & Co., et al.,* No. 5–02–CV–124. The defendants in *Ingenico* and *J.P. Morgan* answered plaintiff's complaint and those cases are progressing toward trial. The First Data Defendants chose to file a motion to dismiss or, in the alternative, for a more definite statement. In an amended response to this motion filed on November 6, 2002, plaintiff agreed to dismiss the action without prejudice and "re-plead its case with the specificity requested by the First Data Defendants" within one week of dismissal. (Def.App. at 3). The next day, plaintiff filed a Rule 41(a) notice of dismissal in the Texarkana court and sued the First Data Defendants, as well as a new defendant, MicroBuilt Corporation, in the Dallas Division of the Northern District of Texas.[1]

The First Data Defendants now move to transfer this case to the Texarkana Division of the Eastern District of Texas pursuant to 28 U.S.C. § 1404(a). The motion has been fully briefed and argued by the parties and is ripe for determination.

## II.

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of this statute is "to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Andrade v. Chojnacki,* 934 F.Supp. 817, 832 (S.D.Tex. 1996), *quoting State Street Capital Corp. v. Dente,* 855 F.Supp. 192, 197 (S.D.Tex. 1994). In ruling on a motion to transfer venue under section 1404(a), the court should consider various private interest factors, such as: (1) the availability and convenience of the witnesses and parties; (2) the availability of process to compel the attendance of unwilling witnesses; (3) the cost of obtaining attendance of witnesses; (4) the relative ease of access to sources of proof; (5) the place of the alleged wrong; (6) the possibility of delay and prejudice if the case is transferred; and (7) the plaintiff's right to choose its forum. *Nokia Corp. v. Buca, Inc.,* 2002 WL 1461913 at *1 (N.D.Tex. Jul.2, 2002), *citing Dupre v. Spanier Marine Corp.,* 810 F.Supp. 823, 825 (S.D.Tex.1993). The movant must demonstrate that the balance of convenience and justice weighs heavily in favor of transfer. *Id.*

Although the letter of section 1404(a) might suggest otherwise, it is well established that "the interest of justice" is an important factor in the transfer analysis.[2] *See In re Medrad, Inc.,* 1999 WL 507359 at *2 (Fed.Cir. Jun.25, 1999), *citing*

---

1. Plaintiff was entitled to unilaterally dismiss the Texarkana action because the First Data Defendants had not served an answer or a motion for summary judgment. *See* FED. R. CIV. P. 41(a)(1).

2. Plaintiff argues that the Supreme Court has indicated it would reject this interpretation of section 1404(a). (Plf. Supp. Br. at 1 n. 1). However, the two cases cited for that proposition are inapposite. The issue in *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988), was the proper weight to be given a forum selection clause in conducting a section 1404(a) analysis. In *Ferens v. John Deere Co.,* 494

U.S. 516, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990), the court held that, when a case is transferred under section 1404(a), the transferee court must follow the choice-of-law rules of the transferor court. Neither decision precludes a case from being transferred "in the interest of justice." To the contrary, the *Stewart* court reaffirmed that "[s]ection 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience *and fairness.*'" *Stewart,* 108 S.Ct. at 2244, *quoting Van Dusen v. Barrack,* 376 U.S. 612, 622, 84

15 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3854 at 439–41 (2d ed.1986). Transfer is particularly appropriate where related cases involving the same issues are pending in another court. In *Continental Grain Co. v. Barge FBL–585,* 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960), the Supreme Court observed:

> To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent. Moreover, such a situation is conductive to a race of diligence among litigants for a trial in the District Court each prefers.

*Id.,* 80 S.Ct. at 1474. Since *Continental Grain,* a number of courts, including the Fifth Circuit, have held that the existence of related litigation in a transferee court is a factor that weighs strongly in favor of transfer. *See Jarvis Christian College v. Exxon Corp.,* 845 F.2d 523, 528–29 (5th Cir.1988); *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 221 (7th Cir.1986). Piecemeal litigation in the complex and technical area of patent and trademark law is especially undesirable. *See Smiths Industries Medical Systems, Inc. v. Ballard Medical Products, Inc.,* 728 F.Supp. 6, 7 (D.D.C.1989). In such cases, the "interest of justice" may dictate transfer even if the convenience of the parties and witnesses calls for a different result. *The Black & Decker Corp. v. Amirra, Inc.* 909 F.Supp. 633, 639 (W.D.Ark.1995). *See also Hunter Engineering Co. v. ACCU Industries, Inc.,* 2002 WL 31356392 at * 13 (E.D.Va. Oct.10, 2002) (judicial economy favored transfer to another court more familiar with patent issues involved in suit); *Haworth, Inc. v. Herman Miller, Inc.,* 821 F.Supp. 1476, 1479 & n.3 (N.D.Ga.1992) (same); *Ricoh*

*Co., Ltd. v. Honeywell, Inc.,* 817 F.Supp. 473, 487–88 & n. 27 (D.N.J.1993) (transfer of patent case to court where related action was pending promoted judicial economy and eliminated possibility of inconsistent rulings); *Pall Corporation v. Bentley Laboratories, Inc.,* 523 F.Supp. 450, 453 (D.Del.1981) (same).

### A.

Plaintiff tacitly concedes that this action could have been brought in the Eastern District of Texas. Indeed, plaintiff would be hard-pressed to argue otherwise since it originally sued the First Data Defendants in Texarkana. Notwithstanding its original decision to file suit in the Eastern District of Texas, plaintiff now claims that "Dallas is the best, most convenient forum to litigate this dispute." (Plf. Resp. Br. at 1).

Ordinarily, a plaintiff's choice of forum is "highly esteemed." *N2 Consulting, LLC v. Engineered Fastener Co.,* 2002 WL 31246770 at *2 (N.D.Tex. Oct.2, 2002), *quoting Aguero v. Christopher,* 481 F.Supp. 1272, 1275 (S.D.Tex.1980). However, this factor becomes less significant where, as here, the plaintiff originally filed suit in another district. "It is one thing to give weight to plaintiff's initial choice of forum, but it seems odd that a plaintiff who has chosen an improper forum should have great weight given to [its] second choice." *FPC Corp. v. Uniplast, Inc.,* 994 F.Supp. 945, 946 (N.D.Ill.1998), *quoting* 15 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3848 at 394 (2d ed.1986). Consequently, this factor does not weigh in favor of or against transfer.

Nor do the other private interest factors inform the court's decision on the transfer issue. Neither plaintiff nor the First Data Defendants maintains an office in the Northern or Eastern District of Texas.[3]

---

S.Ct. 805, 812, 11 L.Ed.2d 945 (1964) (emphasis added).

**3.** Plaintiff has its principal place of business in Melville, New York. (Plf. First Am. Compl.

The availability of party witnesses, the cost of obtaining the attendance of unwilling witnesses, and the relative ease of access to sources of proof will be substantially the same whether the case remains in Dallas or is transferred to Texarkana. In fact, the First Data Defendants had already produced more than 35,000 pages of documents before plaintiff dismissed the Texarkana action and re-filed in Dallas. The alleged infringing activity occurred in both districts. Although lead counsel for plaintiff and the First Data Defendants are located in Dallas, both parties have local counsel in the Eastern District of Texas.

The most persuasive argument made by plaintiff for keeping this case in Dallas is that "[t]ransportation in and out of DFW International Airport is [ ] much easier than flying into the Texarkana airport, which only offers flights *from DFW airport.*" (Plf. Resp. Br. at 9) (emphasis in original). While this may be true, it does not tip the balance in favor of retaining venue in the Northern District of Texas. As the Fifth Circuit once noted, "this case is not being consigned to the wastelands of Siberia or some remote, distant area of the Continental United States." *Jarvis,* 845 F.2d at 528. The minor inconvenience plaintiff may suffer in having to litigate this action in Texarkana, less than 200 miles away, rather than in Dallas, does not in itself preclude transfer to the Eastern District of Texas. *Id.* (trial judge did not abuse discretion in transferring case from Houston to Tyler, "only 203 miles distant," where related litigation was pending); *see also Reiffin v. Microsoft Corp.,* 104 F.Supp.2d 48, 52 (D.D.C.2000) (plaintiff was not unduly burdened by transfer to another district where he had filed a related patent action).

Plaintiff further argues that it will be prejudiced by the possibility of delay if this case is transferred. According to plaintiff, the Texarkana docket is substantially overburdened which made it difficult to obtain hearings on motions while the case was pending in the Eastern District of Texas. Statistics maintained by the Administrative Office of the United States Courts for the 12-month period ending September 30, 2001 show that there were 4,342 pending cases in the Northern District of Texas, with an average of 466–534 cases per sitting judge. By contrast, there were 3,706 pending cases in the Eastern District of Texas, with an average of 473–540 cases per judge. These numbers are virtually identical. As a result, the court is unable to conclude that docket conditions favor one district over the other.

**B.**

Recognizing the neutrality of these private interest factors, the First Data Defendants argue that "the interest of justice" requires transferring this case to Texarkana where it was originally filed and two related patent infringement actions are currently pending. "Transfer is particularly appropriate where there is a prior pending lawsuit in the transferee district involving the same facts, transactions, or occurrences." *Levitt v. Maryland Deposit Insurance Fund Corp.,* 643 F.Supp. 1485, 1493 (E.D.N.Y.1986). This is especially true in patent cases, where the court is required to interpret the claims of the patent in-suit. The importance of uniformity in claim construction was addressed by the Supreme Court in *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996):

"[T]he limits of a patent must be known for the protection of the patentee, the

---

at 1, ¶ 1). The First Data Defendants maintain offices in Greenwood Village, Colorado

and Houston, Texas. (*Id.* at 1–2, ¶¶ 2–4; Plf. Resp., Exh. F).

encouragement of the inventive genius of others and the assurance that the subject of the patent will be dedicated ultimately to the public." Otherwise, a "zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims would discourage invention only a little less than unequivocal foreclosure of the field," (citation omitted) and "[t]he public [would] be deprived of rights supposed to belong to it, without being clearly told what it is that limits these rights." (citation omitted).

*Id.*, 116 S.Ct. at 1396 (brackets in original). Having two different courts interpret the same patent claims would risk inconsistent claim construction rulings which, in turn, would promote uncertainty and impede the administration of justice. This untenable prospect favors resolving related patent cases in the same forum whenever possible. *See Hunter Engineering*, 2002 WL 31356392 at *14.

The two patent cases currently pending in Texarkana, *Ingenico* and *J.P. Morgan*, are assigned to the same district judge and magistrate judge who presided over the *First Data* case before it was dismissed by plaintiff. The Texarkana cases are progressing toward trial. The parties have exchanged their preliminary claim and infringement contentions, preliminary invalidity contentions, and proposed claim construction statements. The first phase of a claim construction hearing in *J.P. Morgan* is scheduled for April 23, 2003, with a ruling expected thirty days thereafter. Experts in those cases have given the magistrate judge a tutorial on the technology covered by the '988 and '137 Patents. Given the progress of the Texarkana litigation, that court is more prepared and better suited to address the issues related to the patents in-suit.

The only contrary argument offered by plaintiff is that *Ingenico* and *J.P. Morgan*

"involve completely different defendants, accused instrumentalities, and claims of infringement, affirmative defenses, and prior art." (Plf. Resp. Br. at 7). While the parties and accused devices may be different, other similarities between this case and the Texarkana actions are more than sufficient to warrant transfer. Plaintiff accuses the First Data Defendants of infringing 41 of the 50 claims of the '988 Patent and 34 of the 43 claims of the '137 Patent. (Plf.Orig.Compl., App.1–2). At oral argument, plaintiff's counsel conceded that many of the same patent claims are at issue in *Ingenico* and *J.P. Morgan*, although some of the claim elements may be different. The First Data Defendants have pled various affirmative defenses in this case, including non-infringement, invalidity, and unenforceability due to inequitable conduct. (Def. Ans. & Countercl. at 4–5, ¶¶ 15–18). The same defenses are asserted by the defendants in *Ingenico* and *J.P. Morgan*. Finally, the First Data Defendants have indicated that they will rely on some of the same prior art as the defendants in the Texarkana cases to support their invalidity defense.

Plaintiff also points out that four other infringement actions involving the '988 and '137 Patents are currently pending in the Dallas Division of the Northern District of Texas. *DataTreasury Corp. v. RDM Corp.*, No. 3–02–CV–2641; *DataTreasury Corp. v. Viewpointe Archive Services, L.L.C.*, No. 3–02–CV–2642; *DataTreasury Corp. v. Electronic Data Systems Corp.*, No. 3–02–CV–2643; *DataTreasury Corp. v. Bank One Corp.*, No. 3–03–CV–0059. Because more cases are pending in Dallas than in Texarkana, plaintiff argues that "the interest of justice" no longer favors transfer to the Eastern District of Texas. (Plf. Supp. Br. at 2). Curiously, all four cases were filed by plaintiff *after* the First Data Defendants filed their motion to transfer venue.

Without directly impugning plaintiff's motives, the timing of these other lawsuits is suspect.[4] Suffice it to say that the progress of the Texarkana litigation is considerably more advanced than any of the cases pending in Dallas. Therefore, judicial economy dictates that this case be transferred to the Texarkana Division of the Eastern District of Texas. *See Haworth,* 821 F.Supp. at 1479 & n. 3 (transfer warranted where transferee court presided over earlier litigation involving same patent); *American Telephone & Telegraph Co. v. MCI Communications Corp.,* 736 F.Supp. 1294, 1307 (D.N.J.1990) (where balance of conveniences was "near equipoise," court transferred case in "the interest of justice" to district where related pending action was first filed).

### CONCLUSION

The interest of justice weighs heavily in favor of transferring this patent infringement action to Texarkana where it can be heard by the same judge presiding over two other cases filed by plaintiff involving the same patents. Accordingly, the First Data Defendants' motion to transfer venue is granted. This case is hereby transferred to the Texarkana Division of the Eastern District of Texas.

SO ORDERED.

---

4. Plaintiff's timing in dismissing the *First Data* lawsuit in Texarkana and refiling the same case in Dallas is also suspect. The Texarkana action was unilaterally dismissed by plaintiff on November 7, 2002—just five weeks after the presiding judge ruled against plaintiff's counsel in another patent infringement action. *Power Mosfet Technologies, LLC v. Siemens AG,* No. 5–99–CV–168 (E.D.Tex. Sept. 30, 2002).