John HANBY and Hanby Environmental Laboratory Procedures, Inc., Plaintiffs,

v.

SHELL OIL CO., Shell Exploration and Development Co., Shell International Ltd., Azur Environmental Ltd. and Chemetrics, Inc., Defendants.

Civil Action No. 1:00CV331.

United States District Court, E.D. Texas, Beaumont Division.

March 5, 2001.

Walter Umphrey, Provost & Umphrey, Beaumont, TX, Guy E. Matthews, Houston, TX, for plaintiff.

Phillip Bruce Dye, Vinson & Elkins, Houston, TX, for defendant Shell.

David Craig Landin, Hunton & Williams, Richmond, VA, for defendant Chemetrics.

John W. Newton III, Orgain Bell & Tucker, Beaumont, TX, Mohamed Alim Malik, Jackson Demarco & Peckenpaugh, Irvine, CA, for defendant Azur.

## MEMORANDUM OPINION

COBB, District Judge.

Before the court is Defendant Shell Oil Company's ("Shell") Motion to Transfer Venue [12] to the Southern District of Texas, Houston Division. Defendant Chemetrics also filed a Motion to Transfer Venue [20], incorporating by reference Shell's original motion without other argument and this Court will treat the two as one. The Court having reviewed the motion and the response by Plaintiffs Hanby and Hanby Environmental Laboratory Procedures, Inc., ("HELP") on file is of the opinion that the motion [docket numbers 12 and 20] be GRANTED.

### I. Background.

Plaintiffs John Hanby and HELP are the inventor and the exclusive licensee/marketing company, respectively, of the "Hanby Test Kit." The Hanby Test Kit provides an on-site means of testing for aromatic hydrocarbon contamination employing a Friedel–Craft alkylation reaction in a hydrous environment, which was not

previously supposed possible within the scientific community. It is protected under United States Patent No. 4,992,379 ("the '379 patent"). Hanby is a resident of Houston, Texas. HELP is a Texas corporation with its principal place of business in Houston.

At various times, Shell and Shell International Limited ("Shell Limited") apparently purchased some number of the Hanby Test Kits. In 1994, Shell Limited filed a patent application for a similar process in the United Kingdom. In 1995, an application was filed for a United States patent, which was assigned to Shell by Shell Limited. In 1998, such U.S.Patent no. 5,834,655 ("the '655 patent") was issued. Subsequently, a hydrocarbon contamination testing kit under the trade name RemediAid was developed by Azur Environmental Limited ("Azur") in England and marketed by Chemetrics, Inc., in the United States. Shell research was apparently involved in the development of the patent and the new test kit.

Shell is a Texas corporation with its principal place of business in Harris County and its registered agent in Houston. Shell Limited is an English corporation with its principal place of business in London (Shell Limited seeks to be dismissed from this action in a separate motion not addressed herein). Azur is an English corporation with its principal place of business in London. Chemetrics is a Virginia corporation. As to Shell Exploration and Development Co., a defendant named in the style of this action as brought by Hanby and HELP, Defendants assert that there is no such company. In the text of the original complaint, Plaintiffs refer to "Shell Exploration and Production (as opposed to Development) Co.," and assert it is a Delaware corporation doing business in Harris County, Texas. Regardless of the true identity of the defendant intended to be named by Plaintiffs, they have not stated what involvement it has in this dispute. Harris County and the city of Houston are in the Southern District of Texas.

Hanby and HELP claim that the '655 patent is an infringement of their '379 patent and have described in detail how it infringes (both from the perspective of their scientific research and advances in aromatic organic chemistry and from the practical methodology of the Hanby Test Kit versus the RemediAid test kit). They claim that Shell is the central player in the alleged infringement with pertinent roles played by the other defendants.

Plaintiffs filed their action on May 17, 2000, in the Eastern District of Texas for patent infringement, dilution/injury to business reputation, unfair competition, and tortious interference with contract/business relation. They seek relief under 35 U.S.C. § 271, 15 U.S.C. § 1115 and pertinent Texas state laws.

Plaintiffs make no claim as to any sales or otherwise infringing activity having occurred in the Eastern District of Texas. They do make a generalized and nonspecific claim that various of the defendants carry on "business" in the Eastern District. None of that "business" is shown to be directly in connection to the claims of this action. Shell counters that only ten of the RemediAid kits have ever been sold, and none of them in the Eastern District. *See* Defendant's Motion to Transfer at 4. Plaintiffs do not refute that contention, but point out that Chemetrics markets the RemediAid via its web site (www.chemetircs.com), which is available to viewers in the Eastern District (and worldwide). *See* Plaintiffs' Response to Defendant Shell Oil's Motion to Transfer at 3.

Each party has enjoyed various extensions of time, by mutual agreement and motion to this Court, in which to prepare and file pleadings, responses, and motions.

Defendant Shell Oil filed the instant Motion to Transfer Venue on December 28, 2000. By agreement, Plaintiffs requested and were granted an extension in time to file their response, which was timely filed on February 13, 2001. This Court will now rule on Defendant's motion.

## II. Transfer of Venue Analysis.

### A. Basis.

A court is empowered to transfer an action to another federal venue under 28 U.S.C. § 1404. Such transfer may occur for the convenience of the parties and witnesses and in the interest of justice, if made to any other district or division where the action may have been brought. *See* 28 U.S.C. § 1404(a). It is within the sound discretion of the court to decide to transfer venue. *See Id.* § 1404(b); *Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir.1988); *Gajeske v. Wal Mart Stores, Inc.*, 2000 U.S.Dist. LEXIS 6158, at *10 (E.D.Tex. Apr. 5, 2000).

■ The moving party bears the burden of demonstrating why the forum should be changed and the burden is a strong one as to proving that the convenience factors clearly favor such a change. *See Gajeske*, 2000 U.S.Dist. LEXIS 6158 at *10–11 (E.D.Tex. Apr. 5, 2000). As to the weight required of such a showing, some Eastern District courts have required evidence to be presented beyond the assertions in well-pleaded motions and documents. *See In re Triton Limited Securities Litigation*, 70 F.Supp.2d 678, 688 (E.D.Tex.1999) (stating that "the moving party seeking a transfer cannot carry its burden by merely making unsupported assertions, but rather must properly establish relevant venue facts by affidavit, deposition, or otherwise"); *Gajeske v. Wal Mart Stores, Inc.*, 2000 U.S.Dist. LEXIS 6158, at *9–10 (E.D.Tex. Apr. 5, 2000) (citing *In re: Triton* ). Those opinions cite a Third Circuit

Court of Appeals ruling that evidence beyond simply reading the subject contract in a contract dispute was required to transfer venue. *See Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756–57 (3d Cir. 1973) (stating a preference that a motion to transfer be supported with "affidavits, depositions, stipulations, *or other documents containing facts that would tend to establish the necessary elements* for a transfer") (emphasis added).

The Fifth Circuit Court of Appeals does not have such a rigid requirement. To the extent that it is advisable to rely on more than counsel's pleadings, this Court notes that Defendant Shell has provided the sworn declaration of Shell attorney Yung–Yi Grace Tsang certifying under penalty of perjury the residence issues, basic facts of the case, and identity and location of witnesses to be called in support of its defense. *See* Defendant's Motion to Transfer, Exhibit A. Taken with the assertions in Shell's pleading, her sworn statement tends to establish that no infringing activity was conducted nor witness located in the Eastern District and that Harris County was the center of activity and is the location of Shell's witnesses.

■ When deciding whether to transfer venue, the trial court must exercise its discretion in light of the particular circumstances of the case. *See Radio Santa Fe v. Sena*, 687 F.Supp. 284, 287 (E.D.Tex. 1988). The court should balance two categories of interest in determining whether to transfer venue: (1) the convenience of the litigants, and (2) the public interests in the fair and efficient administration of justice. *See Robertson v. Kiamichi RR Co., L.L.C* ., 42 F.Supp.2d 651, 655 (E.D.Tex. 1999).

■ Convenience factors include: (1) plaintiff's choice of forum; (2) convenience of parties and witnesses; (3) place of the

alleged wrong; (4) location of counsel; (5) cost of obtaining the attendance of witnesses; (6) accessibility and location of sources of proof; and (7) possibility of delay and prejudice if transfer is granted. *See Id.*

■ Public interest factors include: (1) administrative difficulties caused by court congestion; (2) local interest in adjudicating local disputes; (3) unfairness of burdening citizens in an unrelated forum with jury duty; and (4) avoidance of unnecessary problems in conflict of laws. *See Id.*

## B. Convenience Factor Analysis.

■ (1) Plaintiff's Choice of Forum. Ordinarily, a plaintiff's right to choose a forum is well-established, and there is a strong presumption favoring a plaintiff's choice. *See Id.* at 655; *In re Triton,* 70 F.Supp.2d at 688 (E.D.Tex.1999). However, this is not always the case:

> Courts have developed a bewildering variety of formulations on how much weight is to be given to plaintiff's choice of forum. Some courts say ... that it is the paramount or primary consideration ... Other cases take a less than enthusiastic view of the weight to be given plaintiff's choice ... [where plaintiff] chooses a forum with no obvious connection to the case.

*Robertson v. Kiamichi RR Co., L.L.C.,* 42 F.Supp.2d 651, 655–56 (E.D.Tex.1999) (quoting 15 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3848 (1986) (footnotes omitted)).

■ Where the plaintiff's chosen forum has no factual nexus to the case, that choice carries little significance if other factors weigh in favor of transfer. *See Robertson v. Kiamichi RR Co., L.L.C.,* 42 F.Supp.2d at 656 (E.D.Tex.1999).

Further, "[T]his court, and many others, have ruled previously in a number of other cases (footnote omitted) that the usual deference accorded the plaintiff's choice of forum is of minimal value when none of the parties reside in this division of this District. This is such a case." *See Rock Bit Internat'l, Inc. v. Smith Internat'l, Inc.,* 957 F.Supp. 843, 844 (E.D.Tex.1997). *See also Time, Inc. v. Manning,* 366 F.2d 690, 698 (5th Cir.1966); *Rich v. Southern Gulf Operators,* 879 F.Supp. 49, 51 (E.D.Tex. 1995); *Mortensen v. Maxwell House Coffee Co.,* 879 F.Supp. 54, 56–57 (E.D.Tex. 1995).

Here, no party or identified witness resides in the Eastern District. There is no nexus of activity within the Eastern District. All such activity took place, and many of the entities exist, in the Southern District. The connection of the Eastern District to this case appears nonexistent.

Accordingly, minimal deference is given to plaintiff's choice of the Eastern District, Beaumont Division, as their preferred venue. This Court will look to the other factors to determine their appropriate weight in favor of transfer.

(2) Convenience of Parties and Witnesses. Beaumont is not nearly so convenient a location to any of these entities as the federal court in downtown Houston. Plaintiffs argue that some courts have indicated that driving distances of 100–150 miles are not inconvenient. *See Mohamed v. Mazda Motor Corp.,* 90 F.Supp.2d 757, 774 (E.D.Tex.2000). Perhaps that is true when traveling between Dallas and Marshall, as the court referred to in that case. That court, however, also found some nexus of connection between the action and the Marshall Division of the Eastern District. Further, those plaintiffs may have been residents of Marshall. The defendant was a resident of California and the court considered the difference between

the California—Dallas and the California—Marshall trip to be minimal. That court, therefore, found sufficient reason to deny transfer to the Northern District of Texas. *See Id.* at 776. Those facts do not pertain here for the reasons stated *supra.* In addition, for those individuals who will have to travel from points out-of-state, Houston's two major airports, Hobby and Bush Intercontinental, will serve travel into Houston far better than the Southeast Texas Regional Airport could serve Beaumont.

■ Where another venue is more convenient to the residences of the parties, in terms of travel miles, over a more remote venue with no factual nexus to the case, the closer venue is the more appropriate. *See Robertson v. Kiamichi RR Co. L.L.C.,* 42 F.Supp.2d at 657 (E.D.1999).

This factor leans strongly in favor of transferring venue to the Houston Division of the Southern District.

(3) Place of the Alleged Wrong. Plaintiffs have not shown that any alleged wrong took place in Beaumont while defendant's filings have tended to show that the proper location of the alleged wrong is Houston. There may be other places, such as the United Kingdom or Virginia. None of these are in the Eastern District. Therefore, this factor leans strongly toward transferring venue to the Houston Division of the Southern District. *See Mortensen,* 879 F.Supp. at 56 (E.D.Tex.1995).

■ (4) Location of Counsel. The location of counsel is given little weight as compared to the other convenience factors. *See Robertson,* 42 F.Supp.2d at 658 (E.D.Tex.1999). Plaintiffs have counsel in both Houston and in Beaumont. Shell's counsel is in Houston. Counsel for the other defendants are in various locations outside either District. The same analysis as that applied to the convenience of the parties and witnesses applies here and this factor leans somewhat toward transferring venue to the Houston Division of the Southern District.

(5) Cost of Obtaining the Attendance of Witnesses. Defendants have provided a listing of specifically named witnesses they intend to call, all of whom are in the Southern District. Plaintiffs state they will call witnesses from "the Eastern District of Texas, California, Virginia, the United Kingdom, the Southern District of Texas, and other Circuits and Districts" without specificity. The same out of state travel analysis pertains to cost as well as to convenience. It is at least as inexpensive to travel into and take accommodation in Houston over Beaumont. Given the additional travel between Houston and Beaumont that venue in the Eastern District would require, this factor leans toward transferring venue to the Houston Division of the Southern District. *See Id.*

(6) Accessibility and Location of Sources of Proof. Sources of proof and business records are in Houston or may be shipped to Houston as easily as to Beaumont. This factor leans strongly toward transferring venue to the Houston Division of the Southern District. *See Id.*

(7) Possibility of Delay and Prejudice if Transfer is Granted. Given that action in this case was delayed by settlement negotiations and extensions of time benefitting both parties, the possibility of prejudice in a transfer is minimal. Plaintiffs point out that they filed a motion for preliminary injunction concurrently with filing the action. However, they have not requested a hearing on the motion nor pursued action on it. On that basis, this Court cannot see any greater delay or prejudice to the parties by transferring venue to the Houston Division of the Southern District.

## C. Public Interest Factors.

 (1) Administrative Difficulties Caused by Court Congestion. Plaintiffs argue that while all the courts in both Districts are "crowded with cases," this case has been pending in the Eastern District "for about a year." *See* Plaintiffs' Response to Defendant Shell Oil Company's Motion to Transfer at 9. That is both inaccurate and an overstatement. The case was filed less than ten months ago. Further, "[S]peed of disposition of lawsuits without any Beaumont connection is not a valid reason for forum shopping," although filing cases without any rational relationship to the District could create congestion beyond its judicial resources. *See Rock Bit Internat'l, Inc., v. Smith Internat'l, Inc.,* 957 F.Supp. 843, 844 (E.D.Tex.1997). Therefore, plaintiffs' argument carries little weight.

There are three federal district court judges and two magistrates in the Beaumont Division of the Eastern District, some of whom share responsibility for cases brought in the Lufkin Division, the Sherman Division and the Paris Division. There are ten federal district court judges and five magistrates in the Houston Division of the Southern District. The number of pending civil cases between the Eastern District (as a whole) and the Southern District (as a whole) were roughly the same as of the most recent statistical compilation. *See* Administrative Office of the United States Courts, *Federal Judicial Caseload Statistics* (Mar. 31, 2000). This Court sees no greater congestion in the Houston Division than in Beaumont.

Therefore, this factor leans toward transferring venue to the Houston Division of the Southern District.

(2) Local Interest in Adjudicating Local Disputes. The citizens of the Southern District of Texas have a strong local interest in resolving this controversy. There is no corresponding local interest in the Beaumont Division of the Eastern District. Therefore, this factor strongly leans in favor of transferring venue to the Houston Division of the Southern District. *See Robertson v. Kiamichi RR Co. L.L.C.,* 42 F.Supp.2d at 659 (E.D.Tex.1999).

(3) Unfairness of Burdening Citizens in an Unrelated Forum with Jury Duty. Where the citizens of Houston have a greater interest in adjudicating the dispute, it would be unfair to burden the citizens of Beaumont to do so when there is no similar interest in the Eastern District. *See Id.* This factor strongly leans toward transferring venue to the Houston Division of the Southern District.

(4) Avoidance of Unnecessary Problems in Conflict of Laws. This action is governed by federal law and Texas state law, each of which would be applied whether the action were pursued in either District. Therefore, this factor has no bearing either way.

## III. Conclusion.

Given the minimal weight deserved by the plaintiffs' choice of forum in this case, wherein none of the parties reside in Beaumont and where there is no factual nexus to Beaumont, the relative weight of the remaining factors lead this Court to the conclusion that this action far more properly belongs in the Houston Division of the Southern District. This ruling is in accord with prior rulings of this Court and several other courts of this District.

It is, therefore, ORDERED that Defendants' Motion to Transfer Venue to the Houston Division of the Southern District of Texas is GRANTED, and this case and all other filings and pending motions thereto are hereby TRANSFERRED to that District and Division.