**RAY MART, INC. d/b/a Tri–Supply Company and Weldon Vybiral, Plaintiffs,**

v.

**STOCK BUILDING SUPPLY OF TEXAS, L.P., Defendant.**

**Civ.A. No. 1:05–CV–855.**

United States District Court, E.D. Texas, Beaumont Division.

Feb. 14, 2006.

582

Bruce Manuel Partain, Gary James Lin-
thicum, Wells Peyton Greenberg & Hunt
LLP, Beaumont, TX, for Plaintiffs.

William Stephen Cockerham, III, Bridg-
et Alison Blinn, Hunton & Williams, Dal-
las, TX, for Defendant.

## MEMORANDUM AND ORDER

CRONE, District Judge.

Pending before the court are Defendant Stock Building Supply of Texas, L.P.'s ("Stock") Expedited Motion to Transfer Venue (# 3) and Plaintiffs Ray Mart, Inc. d/b/a Tri–Supply Company ("Tri–Supply") and Weldon Vybiral's ("Vybiral") (collectively "Plaintiffs") Motion to Remand (# 11). Defendant seeks a transfer of venue under 28 U.S.C. § 1404(a) from the United States District Court for the Eastern District of Texas, Beaumont Division, to the United States District Court for the Western District of Texas, Waco Division. Plaintiffs seek remand to state court of this declaratory judgment and breach of employment contract action against Stock, asserting that this court lacks subject matter jurisdiction. Having reviewed the motions, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that Plaintiffs' motion to remand should be denied and that Defendant's motion to transfer venue should be granted.

## I. *Background*

On December 14, 2005, Plaintiffs filed suit against Stock in the 172nd Judicial District Court of Jefferson County, Texas, asserting a variety of claims stemming from Vybiral's employment contract with Stock. Specifically, Plaintiffs seek a declaratory judgment that the covenant-not-to-compete provision in Vybiral's employment contract with Stock is unenforceable. Vybiral also asserts a claim for breach of the employment contract, alleging that Stock failed to pay him certain work-related bonuses. Plaintiff Vybiral is a citizen and resident of Moody, Bell County, Texas. Tri–Supply is a Texas corporation with its principal place of business located in Jefferson County, Texas. Defendant Stock is a Delaware limited partnership. Its general partner, Stock Building Supply, Inc., is a citizen of North Carolina, and its limited partner, Stock Building Supply West, Inc., is a Utah corporation with its principal place of business in North Carolina.

From 1990 until 2003, Jeld–Wen, Inc. ("Jeld–Wen") employed Vybiral as the general manager of its Temple, Texas, door mill operation. In 2003, Stock purchased Jeld–Wen, including its door mill operation in Temple, which Stock now operates. On January 13, 2003, Vybiral signed an employment agreement with Stock. The employment contract contains a covenant against competition, which restricts Vybiral for two years after the termination of his employment from "engag[ing] in any business that the Employer currently conducts or enters into during the term of Employee's employment hereunder, within a 100 mile radius of Employer's Temple, Texas branch (the Branch)." Vybiral alleges that, upon its acquisition of Jeld–Wen, Stock told him that his "compensation, including the calculation of [his] bonus, work duties, and conditions would remain the same as they had been with JELD–WEN, Inc."

On November 30, 2005, Vybiral notified Stock that he was resigning and gave a two-week notice. The following day, Stock terminated his employment. Vybiral received a letter from Stock's counsel dated December 9, 2005, which states that Stock has information leading it to believe that Vybiral may have engaged in conduct that violated his employment agreement by: "1) working for, or acting on behalf of, Tri–Supply; 2) soliciting Stock customers on behalf of Tri–Supply; and 3) soliciting Stock employees to quit their employment with Stock and come work for Tri–Supply."

On January 1, 2006, Vybiral commenced employment at Tri–Supply, which operates a door mill and pre-hanging shop in Tem-

ple, Texas. The doors are sold to commercial builders, residential builders, and the public throughout the State of Texas.

In their original petition, Plaintiffs request: (1) a declaration that the covenant against competition provision in Vybiral's employment contract with Stock is unenforceable; (2) monetary damages for breach of Vybiral's employment contract because Stock did not pay him bonuses commensurate with bonuses he received when he was employed by Jeld–Wen; and (3) reasonable and necessary attorneys' fees, costs of court, and interest as permitted by Texas law. Plaintiffs do not allege a specific amount of damages, stating that the damages sought are within the jurisdictional limits of the court.

On December 19, 2005, Stock removed this case to federal court on the basis of diversity of citizenship, asserting that "there is complete diversity of citizenship between the parties, in that the parties are citizens and residents of different states and the amount in controversy is in excess of $75,000.00 exclusive of interest and costs." On the same day, Stock filed its motion to transfer venue to the Waco Division of the United States District Court for the Western District of Texas. Plaintiffs filed a motion to remand on January 6, 2006, maintaining that the claimed damages do not exceed the required federal jurisdictional minimum of $75,000.00. *See* 28 U.S.C. § 1332.

II. *Analysis*

A. *Federal Jurisdiction in Removed Actions*

"Federal courts are courts of limited jurisdiction." *Peoples Nat'l Bank v. Office of Comptroller of the Currency of United States,* 362 F.3d 333, 336 (5th Cir. 2004); *accord Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Howery v. Allstate Ins. Co.,* 243 F.3d 912, 916

(5th Cir.), *cert. denied,* 534 U.S. 993, 122 S.Ct. 459, 151 L.Ed.2d 377 (2001); *Bobo v. Christus Health,* 359 F.Supp.2d 552, 554 (E.D.Tex.2005). "They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen,* 511 U.S. at 377, 114 S.Ct. 1673 (citations omitted); *see also Boone v. Citigroup, Inc.,* 416 F.3d 382, 388 (5th Cir.2005). Furthermore, "[i]t is often stated that a federal court cannot transfer a case if subject matter jurisdiction does not exist." *Reed v. Fina Oil & Chem. Co.,* 995 F.Supp. 705, 708 (E.D.Tex.1998) (citing *Coons v. American Horse Show Ass'n, Inc.,* 533 F.Supp. 398, 400 (S.D.Tex.1982) (citing 15 CHARLES A. WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3844, at 211 (2d ed.1986))). Hence, in the interests of judicial economy, the court will determine whether federal subject matter jurisdiction exists over this controversy before addressing Stock's motion to transfer venue. *See id.*

Federal courts have subject matter jurisdiction and are authorized to entertain causes of action only where a question of federal law is involved or where there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. §§ 1331, 1332; *Lincoln Prop. Co. v. Roche,* —— U.S. ——, ——, 126 S.Ct. 606, 613, 163 L.Ed.2d 415 (2005); *McDonal v. Abbott Labs.,* 408 F.3d 177, 181 (5th Cir.2005); *Howery,* 243 F.3d at 914–15; *Hart v. Bayer Corp.,* 199 F.3d 239, 246 (5th Cir.2000); *Moore v. Powers,* 279 F.Supp.2d 821, 824 (E.D.Tex.2003). In a removed action, a district court is required to remand the case to state court if,

at any time before final judgment, it determines that it lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c); *McDonal,* 408 F.3d at 182. When considering a motion to remand, the removing party bears the burden of establishing federal jurisdiction and that removal was proper. *See Boone,* 416 F.3d at 388; *see also Garcia v. Koch Oil Co. of Tex., Inc.,* 351 F.3d 636, 638 (5th Cir.2003); *Manguno v. Prudential Prop. & Cas. Ins. Co.,* 276 F.3d 720, 723 (5th Cir.2002); *accord Howery,* 243 F.3d at 919; *De Aguilar v. Boeing Co.* *("De Aguilar II"),* 47 F.3d 1404, 1408 (5th Cir.), *cert. denied,* 516 U.S. 865, 116 S.Ct. 180, 133 L.Ed.2d 119 (1995); *Spill Textile Corp. v. Spilltech Envtl., Inc.,* 223 F.Supp.2d 790, 792 (E.D.Tex.2002).

■■■ The existence of federal subject matter jurisdiction is determined at the time of removal from state court. *See Bissonnet Invs. LLC v. Quinlan (In re Bissonnet Invs. LLC),* 320 F.3d 520, 525 (5th Cir.2003) (citing *Arnold v. Garlock,* 278 F.3d 426, 434 (5th Cir.2001)); *Wingate v. Kerr–McGee Rocky Mountain Corp.,* 353 F.Supp.2d 779, 782 (E.D.Tex.2005); *Jones v. American Home Prods. Corp.,* 344 F.Supp.2d 500, 502 (E.D.Tex.2004). In order to determine whether jurisdiction is present, the claims set forth in the state court petition are considered as of the date of removal. *See Manguno,* 276 F.3d at 723 (citing *Cavallini v. State Farm Mut. Auto. Ins. Co.,* 44 F.3d 256, 264 (5th Cir. 1995) (stating that "a complaint amended post-removal cannot divest a federal court of jurisdiction")); *Gebbia v. Wal–Mart Stores, Inc.,* 233 F.3d 880, 883 (5th Cir. 2000); *Madden v. Able Supply Co.,* 205 F.Supp.2d 695, 699 (S.D.Tex.2002). Any ambiguities are resolved against removal because the removal statute is strictly construed in favor of remand. *See Bosky v. Kroger Tex., LP,* 288 F.3d 208, 211 (5th Cir.2002); *Manguno,* 276 F.3d at 723; *Acuna v. Brown & Root Inc.,* 200 F.3d 335, 339 (5th Cir.), *cert. denied,* 530 U.S.

1229, 120 S.Ct. 2658, 147 L.Ed.2d 273 (2000); *Bobo,* 359 F.Supp.2d at 554; *Spill Textile Corp.,* 223 F.Supp.2d at 792.

■■■ The state court petition is usually consulted to determine the amount in controversy, and the sum claimed by the plaintiff controls if the claim is apparently made in good faith. *See Dow Agrosciences LLC v. Bates,* 332 F.3d 323, 326 (5th Cir. 2003), *cert. denied,* 542 U.S. 936, 124 S.Ct. 2903, 159 L.Ed.2d 810 (2004); *Manguno,* 276 F.3d at 723 (citing *St. Paul Reinsurance Co., Ltd. v. Greenberg,* 134 F.3d 1250, 1253 (5th Cir.1998)); *De Aguilar II,* 47 F.3d at 1408 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938)). "When the claim is one for declaratory relief, the amount in controversy is determined by 'the value of the right to be protected or the extent of the injury to be prevented.'" *Bates,* 332 F.3d at 326 (quoting *Greenberg,* 134 F.3d at 1252–53); *see also Aladdin's Castle, Inc. v. Mesquite,* 630 F.2d 1029, 1035 (5th Cir.1980) (citing *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)); *Component Mgmt. Servs., Inc. v. America II Elecs., Inc.,* No. Civ. 3:03–CV–1210–P, 2003 WL 23119152, at *1 (N.D.Tex. Sept. 9, 2003); *Roberge v. Qualitek Int'l, Inc.,* No. Civ. 01–CV–5509, 2002 WL 109360, at *8 (N.D.Ill. Jan. 28, 2002). Texas law, however, prohibits plaintiffs from pleading for specific amounts in cases of unliquidated damages. *See* Tex.R. Civ. P. 47; *De Aguilar II,* 47 F.3d at 1410. Therefore, when the petition does not specify the amount in controversy, removal is proper if the removing party establishes by a preponderance of the evidence that the amount in controversy exceeds $75,000.00. *See Felton v. Greyhound Lines, Inc.,* 324 F.3d 771, 773 (5th Cir.2003); *Manguno,* 276 F.3d at 723; *Gebbia,* 233 F.3d at 882; *Simon v. Wal–*

*Mart Stores, Inc.,* 193 F.3d 848, 850 (5th Cir.1999); *Greenberg,* 134 F.3d at 1253.

■ "This requirement is met if (1) it is apparent from the face of the petition that the claims are likely to exceed $75,000.00, or, alternatively, (2) the defendant sets forth 'summary judgment type evidence' of facts in controversy that support a finding of the requisite amount." *Manguno,* 276 F.3d at 723 (citing *Simon,* 193 F.3d at 850); *accord Grant v. Chevron Phillips Chem. Co. L.P.,* 309 F.3d 864, 868 (5th Cir.2002), *cert. denied,* 538 U.S. 945, 123 S.Ct. 1634, 155 L.Ed.2d 486 (2003); *Gebbia,* 233 F.3d at 882–83; *Luckett v. Delta Airlines, Inc.,* 171 F.3d 295, 298 (5th Cir.1999). Unless it is apparent from the petition that the amount in controversy exceeds $75,000.00, the defendant may not rely on mere conclusory allegations in the notice of removal to satisfy its burden. *See Felton,* 324 F.3d at 774; *Simon,* 193 F.3d at 850–51. Rather, the defendant "ha[s] an affirmative burden to produce information, through factual allegations or an affidavit" that is sufficient to demonstrate the requisite jurisdictional amount. *Id.* at 851; *see Grant,* 309 F.3d at 869.

■ If it is facially apparent that the amount in controversy likely exceeds $75,000.00 or if the defendant produces sufficient evidence that the jurisdictional amount is satisfied, remand is not warranted unless the plaintiff establishes "to a legal certainty that the claim is really for less than the jurisdictional amount...." *St. Paul Mercury Indem. Co.,* 303 U.S. at 289, 58 S.Ct. 586; *see Grant,* 309 F.3d at 869; *Manguno,* 276 F.3d at 724; *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1335 (5th Cir.1995); *De Aguilar II,* 47 F.3d at 1412. "In other words, where the plaintiff's claims can be proved to be of the type that are worth more than [$75,000.00], they can be removed unless the plaintiff can show he is legally bound to accept less." *Allen,* 63 F.3d at 1335 n. 14; *accord*

*Williams v. State Farm Mut. Auto. Ins. Co.,* 931 F.Supp. 469, 471 n. 3 (S.D.Tex. 1995). The plaintiff "may establish this by identifying a statute, or by filing a binding stipulation, that so limits [his] recovery." *Manguno,* 276 F.3d at 724 (citing *De Aguilar II,* 47 F.3d at 1412); *accord Hogg v. Rust Indus. Cleaning Servs., Inc.,* 896 F.Supp. 655, 657 (E.D.Tex.1995). The United States Court of Appeals for the Fifth Circuit has "emphasized that 'this is not a burden-shifting exercise'; rather, the 'plaintiff must make all information known at the time he files the complaint.'" *Grant,* 309 F.3d at 869 (quoting *De Aguilar II,* 47 F.3d at 1412).

■ The jurisdictional amount is determined at the time of removal; the plaintiff cannot avoid federal jurisdiction by later stipulating to an amount of damages below the jurisdictional minimum. *See St. Paul Mercury Indem. Co.,* 303 U.S. at 292, 58 S.Ct. 586; *Gebbia,* 233 F.3d at 883; *Greenberg,* 134 F.3d at 1253–54; *Allen,* 63 F.3d at 1335; *De Aguilar II,* 47 F.3d at 1412; *Cavallini,* 44 F.3d at 264–65; *De Aguilar v. Boeing Co. ("De Aguilar I"),* 11 F.3d 55, 57 n. 3 (5th Cir.1993); *Marcel v. Pool Co.,* 5 F.3d 81, 84 (5th Cir.1993). As the Supreme Court noted in *St. Paul Mercury Indem. Co.,* "though, as here, the plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction." 303 U.S. at 292, 58 S.Ct. 586. An affidavit, however, may suffice to defeat removal if it merely clarifies, rather than reduces, the demand asserted in a previously ambiguous petition. *See Marcel,* 5 F.3d at 85 (citing *Asociacion Nacional de Pescadores v. Dow Quimica,* 988 F.2d 559, 565 (5th Cir.1993), *cert. denied,* 510 U.S. 1041, 114 S.Ct. 685, 126 L.Ed.2d 653 (1994), *abrogated on other grounds, Marathon Oil Co. v. Ruhrgas,*

*A.G.*, 145 F.3d 211, 215 (5th Cir.1998)); *see also Matney v. Wenger Corp.*, 957 F.Supp. 942, 944 (S.D.Tex.1997). "While post-removal affidavits may be considered in determining the amount in controversy at the time of removal, such affidavits may be considered only if the basis for jurisdiction is ambiguous at the time of removal." *Gebbia*, 233 F.3d at 883. Moreover, if it is facially apparent from the petition that the amount in controversy exceeds $75,000.00 at the time of removal, post-removal affidavits, stipulations, and amendments reducing the amount do not deprive the district court of jurisdiction. *See id.*

■ In their state court petition in the instant case, Plaintiffs demand: (1) a declaration that Vybiral is not bound by the restrictive covenant contained in his employment agreement with Stock; (2) that the covenant against competition in his employment contract is unenforceable and void as a matter of law; (3) monetary damages as a result of Stock's alleged breach of contract; (4) reasonable and necessary attorneys' fees in the trial court and during appeal; (5) costs of court; and (6) interest as permitted by Texas law. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.001 *et seq.* (Vernon 1997). In an apparent attempt to avoid federal jurisdiction, Plaintiffs contend in their motion to remand that the amount in controversy does not exceed $75,000.00. This assertion is refuted, however, by the relief sought in their original petition. *See Component Mgmt. Servs., Inc.*, 2003 WL 23119152, at *1; *Roberge*, 2002 WL 109360, at *8. Vybiral and Tri–Supply cannot seek damages in state court that could reasonably be construed to exceed $75,000.00 and then attempt to avoid federal jurisdiction by later claiming an amount of damages below the jurisdictional minimum. *See St. Paul Mercury Indem. Co.*, 303 U.S. at 292, 58 S.Ct. 586; *Gebbia*, 233 F.3d at 883; *Cavallini*, 44 F.3d at 264–65; *De Aguilar I*, 11 F.3d at 57; *Marcel*, 5 F.3d at 84–85.

■ Plaintiffs submitted affidavits with their motion to remand, stating that "Stock failed to pay [Vybiral] the additional amount of $54,162.21 for bonuses due [him] under the Employment Agreement . . . ." and "that $15,000.00 would be a reasonable attorneys' fee award. . . ." According to Plaintiffs, the amount in controversy is $69,162.21, which is the sum of the bonuses allegedly due Vybiral plus attorneys' fees. Plaintiffs, however, fail to assign any value to the claim for declaratory judgment. *See Component Mgmt. Servs., Inc.*, 2003 WL 23119152, at *1. The value of the declaratory judgment action is determined by appraising the worth of Vybiral's employment during the time period the covenant against competition purports to cover. *See id.* at *2. Vybiral was terminated on December 1, 2005. Thus, the two-year covenant against competition extends until December 1, 2007. Hence, the declaratory judgment's worth is equivalent to the value of Vybiral's employment during this time period. *See id.; Roberge*, 2002 WL 109360, at *8. According to the terms of his employment contract with Stock, Vybiral's compensation and benefits encompassed: an annual base salary of $75,000.00; participation in Stock's bonus program which was calculated based "upon an annual review and commensurate with the programs made available to the Employer's other Branch Managers;" four weeks' annual paid vacation; a monthly automobile or automobile allowance; and immediate vesting in benefits programs including a 401(k) plan, investment retirement account plan, life insurance, health insurance, and disability insurance. In light of the amount of compensation Vybiral would have received during the two years at issue, the value of the declaratory judgment action far exceeds $75,000.00. *See Component Mgmt. Servs., Inc.*, 2003 WL 23119152, at *2; *Roberge*, 2002 WL 109360, at *8.

To warrant remand to state court on the grounds of an insufficient jurisdictional amount, Plaintiffs must show that the amount in controversy at the time of removal appears with a legal certainty to be $75,000.00 or less. *See Manguno,* 276 F.3d at 724; *Allen,* 63 F.3d at 1335 n. 14; *De Aguilar II,* 47 F.3d at 1412. In Texas, where state law does not prohibit an award of damages in excess of the amount sought in the state court petition, " '[l]itigants who want to prevent removal must file a binding stipulation or affidavit with their complaints; once a defendant has removed the case, *St. Paul* makes later filings irrelevant.' " *De Aguilar II,* 47 F.3d at 1412 (quoting *In re Shell Oil Co.,* 970 F.2d 355, 356 (7th Cir.1992)); *see Gebbia,* 233 F.3d at 883; *Allen,* 63 F.3d at 1335. In this case, prior to removal, Plaintiffs did not file a binding stipulation or affidavit in state court attesting that their damages do not exceed $75,000.00. Thus, Plaintiffs' affidavits, submitted with their motion to remand, claiming that their damages do not exceed $75,000.00, are insufficient to deprive this court of subject matter jurisdiction. *See Gebbia,* 233 F.3d at 883; *De Aguilar II,* 47 F.3d at 1413.

Therefore, in view of their multiple claims and the various types of damages sought, the court concludes that based on the original petition and the court's familiarity with the amount of attorneys' fees generally charged for this type of litigation, Plaintiffs' claims can reasonably be construed to exceed $75,000.00 and, hence, are adequate to support federal jurisdiction. Vybiral and Tri–Supply have failed to establish with a "legal certainty" that their claims at the time of removal were actually for less than the federal jurisdictional minimum, making remand inappropriate. Under these circumstances, Plaintiffs' action shall remain in a federal forum.

**B.** *Transfer of Venue*

When the selected venue is proper, a motion to transfer venue from one district or division to another is governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *see In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir.2004); *Action Indus., Inc. v. United States Fid. & Guar. Co.,* 358 F.3d 337, 340 (5th Cir.2004); *In re Horseshoe Entm't,* 337 F.3d 429, 433 (5th Cir.), *cert. denied,* 540 U.S. 1049, 124 S.Ct. 826, 157 L.Ed.2d 698 (2003); *Gleisner v. Presbyterian Hosp. of Plano, Inc.,* Civ. No. 2:05–CV–369, 2005 WL 2455819, at *1 (E.D.Tex. Oct. 5, 2005); *Lajaunie v. L & M Bo–Truc Rental, Inc.,* 261 F.Supp.2d 751, 753 (S.D.Tex.2003); *Seabulk Offshore, Ltd. v. Dyn Marine Servs., Inc.,* 201 F.Supp.2d 751, 754 (S.D.Tex.2002). The purpose of this statute "is to prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses, and the public against unnecessary inconvenience and expense....' " *Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (quoting *Continental Grain Co. v. The Barge FBL–585,* 364 U.S. 19, 26–27, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)); *accord DataTreasury Corp. v. First Data Corp.,* 243 F.Supp.2d 591, 593 (N.D.Tex. 2003); *Shoemake v. Union Pac. R.R. Co.,* 233 F.Supp.2d 828, 829 (E.D.Tex.2002).

Under § 1404(a), the movant has the burden of demonstrating that a change of venue is warranted. *See Peteet v. Dow Chem. Co.,* 868 F.2d 1428, 1436 (5th Cir.), *cert. denied,* 493 U.S. 935, 110 S.Ct. 328, 107 L.Ed.2d 318 (1989); *Time, Inc. v. Manning,* 366 F.2d 690, 698 (5th Cir.1966); *Brown v. Petroleum Helicopters, Inc.,* 347 F.Supp.2d 370, 372 (S.D.Tex.2004); *Lajau-*

*nie*, 261 F.Supp.2d at 753; *Shoemake*, 233 F.Supp.2d at 829; *Seabulk Offshore, Ltd.*, 201 F.Supp.2d at 754. To prevail, the moving party must show that the balance of convenience and justice weighs heavily in favor of a transfer of venue. *See Salinas v. O'Reilly Auto., Inc.*, 358 F.Supp.2d 569, 570 (N.D.Tex.2005); *Von Graffenreid v. Craig*, 246 F.Supp.2d 553, 563 (N.D.Tex. 2003); *DataTreasury Corp.*, 243 F.Supp.2d at 593; *Shoemake*, 233 F.Supp.2d at 829; *Mohamed v. Mazda Motor Corp.*, 90 F.Supp.2d 757, 768 (E.D.Tex.2000). " 'Therefore, when assessing the merits of a § 1404(a) motion, [the] court must determine if a transfer would make it substantially more convenient for the parties to litigate the case.' " *Gardipee v. Petroleum Helicopters, Inc.*, 49 F.Supp.2d 925, 928 (E.D.Tex.1999) (quoting *Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co.*, 844 F.Supp. 1163, 1165 (S.D.Tex.1994)).

■ The decision to transfer a pending case is committed to the sound discretion of the district court. *See Van Dusen*, 376 U.S. at 616, 84 S.Ct. 805; *In re Volkswagen AG*, 371 F.3d at 203; *Casarez v. Burlington N./Santa Fe Co.*, 193 F.3d 334, 339 (5th Cir.1999); *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir.1998), *cert. denied*, 526 U.S. 1157, 119 S.Ct. 2044, 144 L.Ed.2d 212 (1999); *Shoemake*, 233 F.Supp.2d at 829; *LeDoux v. Isle of Capri Casinos, Inc.*, 218 F.Supp.2d 835, 836 (E.D.Tex.2002). "[T]he trial court must exercise its discretion in light of the particular circumstances of the case." *Hanby v. Shell Oil Co.*, 144 F.Supp.2d 673, 676 (E.D.Tex.2001) (citing *Radio Santa Fe, Inc. v. Sena*, 687 F.Supp. 284, 287 (E.D.Tex.1988)); *accord Shoemake*, 233 F.Supp.2d at 829 (citing *Robertson v. Kiamichi R.R. Co.*, 42 F.Supp.2d 651, 655 (E.D.Tex.1999)). "The first issue that a district court must address in ruling on a motion to transfer under § 1404(a) is the question of whether the judicial district to which transfer is sought qualifies under the applicable venue statutes as a judicial district where the civil action 'might have been brought.' " *In re Horseshoe Entm't*, 337 F.3d at 433; *accord In re Volkswagen AG*, 371 F.3d at 203; *Ramos v. Wal–Mart Stores E., Inc.*, Civ. No. 2:05–CV–478, 2006 WL 20780, at *1 (E.D.Tex. Jan. 4, 2006); *Salinas*, 358 F.Supp.2d at 570; *Purdy v. Munden*, 356 F.Supp.2d 658, 659 (E.D.Tex. 2005). In the case at bar, the parties do not dispute that venue is proper and that the case could have been brought in the Waco Division of the Western District of Texas.

■ When, as here, the movant meets this threshold requirement, motions to transfer are adjudicated by a district court through "individualized, case-by-case consideration[s] of convenience and fairness." *Van Dusen*, 376 U.S. at 622, 84 S.Ct. 805; *accord Jackson v. West Telemarketing Corp. Outbound*, 245 F.3d 518, 522 (5th Cir.), *cert. denied*, 534 U.S. 972, 122 S.Ct. 394, 151 L.Ed.2d 299 (2001); *Carney v. Ford Motor Co.*, Civ. No. 2:05–CV–122, 2005 WL 1993449, at *1 (E.D.Tex. Aug. 17, 2005); *Isbell v. DM Records, Inc.*, No. Civ. A. 3:02–CV–1408–G, 2004 WL 1243153, at *13 (N.D.Tex. June 4, 2004); *Shoemake*, 233 F.Supp.2d at 829–30. "In considering a motion to transfer venue, courts weigh factors relating to (1) the litigants' convenience and (2) the public interest in the fair and efficient administration of justice." *Langton v. Cbeyond Commc'n, L.L.C.*, 282 F.Supp.2d 504, 509 (E.D.Tex.2003); *see also Ramos*, 2006 WL 20780, at *1; *Mohamed*, 90 F.Supp.2d at 771. A motion to transfer venue under § 1404(a) thus calls on the district court to weigh various case-specific factors. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *Jackson*, 245 F.3d at 522 n. 9; *Ramos*, 2006 WL 20780, at *1; *Von Graffenreid*, 246 F.Supp.2d at 563. "The de-

termination of 'convenience' turns on a number of private and public interest factors, none of which are given dispositive weight." *In re Volkswagen AG*, 371 F.3d at 203 (citing *Action Indus., Inc.*, 358 F.3d at 340 (citing *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 827 (5th Cir.1986))); *Eliserio v. Floydada Hous. Auth.*, 388 F.Supp.2d 774, 776 (S.D.Tex.2005); *Bolt v. Toyota Motor Corp.*, 351 F.Supp.2d 597, 599 (E.D.Tex. 2004).

 Private interest factors, which involve the preferences and conveniences of the parties and witnesses, include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *See In re Volkswagen AG*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)); *Action Indus., Inc.*, 358 F.3d at 340 n. 8 (citing *Syndicate 420 at Lloyd's London*, 796 F.2d at 831); *Eliserio*, 388 F.Supp.2d at 776; *Purdy*, 356 F.Supp.2d at 659). The Fifth Circuit has held that "the convenience of counsel," which previously had been considered, "is not a factor to be assessed in determining whether to transfer a case under § 1404(a)." *In re Volkswagen AG*, 371 F.3d at 206 (citing *In re Horseshoe Entm't*, 337 F.3d at 434 ("[t]he factor of 'location of counsel' is irrelevant and improper for consideration in determining the question of transfer of venue"); *see Carney*, 2005 WL 1993449, at *1; *Shoemake*, 233 F.Supp.2d at 833–34. Accordingly, the location of Plaintiffs' counsel in Beaumont has no bearing on whether this case should remain in this forum.

 The public interest factors address broader objectives, such as: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized disputes decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws in the application of foreign law. *See In re Volkswagen AG*, 371 F.3d at 203 (citing *Reyno*, 454 U.S. at 241 n. 6, 102 S.Ct. 252); *Action Indus., Inc.*, 358 F.3d at 340 n. 8 (citing *Syndicate 420 at Lloyd's London*, 796 F.2d at 831); *Eliserio*, 388 F.Supp.2d at 776; *Salinas*, 358 F.Supp.2d at 570–71; *Purdy*, 356 F.Supp.2d at 659.

### C. Private Interest Factors

#### 1. The Relative Ease of Access to Sources of Proof

 The relative convenience of the witnesses is often recognized as the most important factor to be considered when ruling on a motion under § 1404(a). *See Spiegelberg v. The Collegiate Licensing Co.*, 402 F.Supp.2d 786, 790 (S.D.Tex.2005); *LeDoux*, 218 F.Supp.2d at 837; *Seabulk Offshore, Ltd.*, 201 F.Supp.2d at 755; *Woolf v. Mary Kay, Inc.*, 176 F.Supp.2d 642, 650 (N.D.Tex.2001), *cert. denied*, 544 U.S. 1061, 125 S.Ct. 2530, 161 L.Ed.2d 1112 (2005); *Houston Trial Reports, Inc. v. LRP Publ'ns, Inc.*, 85 F.Supp.2d 663, 668 (S.D.Tex.1999). "In terms of witnesses, venue is considered convenient in the district or division where the majority of witnesses are located." *Shoemake*, 233 F.Supp.2d at 832 (citing *Robertson*, 42 F.Supp.2d at 657); *accord Mohamed*, 90 F.Supp.2d at 775.

 In considering the availability and convenience of witnesses, a court must concentrate primarily upon the availability and convenience of key witnesses. *See Shoemake*, 233 F.Supp.2d at 832; *McGinnis v. Eli Lilly & Co.*, 181 F.Supp.2d 684, 687 (S.D.Tex.2002); *Houston Trial Re-*

ports, Inc., 85 F.Supp.2d at 668; *Dupre v. Spanier Marine Corp.*, 810 F.Supp. 823, 825 (S.D.Tex.1993); *Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F.Supp. 1392, 1396–97 (S.D.Tex.1992). Indeed, " '[t]he convenience of one key witness may outweigh the convenience of numerous less important witnesses.' " *Houston Trial Reports, Inc.*, 85 F.Supp.2d at 668 (quoting *LeBouef v. Gulf Operators, Inc.*, 20 F.Supp.2d 1057, 1060 (S.D.Tex. 1998)); *accord Continental Airlines, Inc.*, 805 F.Supp. at 1396; *see also Dupre*, 810 F.Supp. at 825. Moreover, it is the convenience of non-party witnesses, rather than of party witnesses, that is more important and is accorded greater weight in a transfer of venue analysis. *See Spiegelberg*, 402 F.Supp.2d at 790–91; *Shoemake*, 233 F.Supp.2d at 832 (citing *State St. Capital Corp. v. Dente*, 855 F.Supp. 192, 198 (S.D.Tex.1994)); *LeDoux*, 218 F.Supp.2d at 837; *Mohamed*, 90 F.Supp.2d at 775. Where the key witnesses are employees of the party seeking a transfer, their convenience is entitled to less weight because the party is able to compel their attendance. *See Z–Tel Commc'ns, Inc. v. SBC Commc'ns, Inc.*, 331 F.Supp.2d 567, 573 (E.D.Tex.2004); *Continental Airlines, Inc.*, 805 F.Supp. at 1397. Hence, it is "the location of key, non-party witnesses that dominates." *Mohamed*, 90 F.Supp.2d at 775.

■ "[W]hether transfer is sought for key party or non-party witnesses, the moving litigant must make more than a general allegation that the key witnesses are inconveniently located." *Id.* (citing *Robertson*, 42 F.Supp.2d at 657); *accord Eliserio*, 388 F.Supp.2d at 777 n. 2 (citing *Dupre*, 810 F.Supp. at 825). "Conclusory allegations are not sufficient—the moving party must identify the key witnesses to be called and present a generalized statement of what their testimony would include." *Williams v. Southern Towing Co.*, No. Civ. A. 03–2688, 2004 WL 60314, at *2

(E.D.La. Jan. 8, 2004); *accord Salinas*, 358 F.Supp.2d at 572; *Z–Tel Commc'ns, Inc.*, 331 F.Supp.2d at 574; *Holmes v. Energy Catering Servs., L.L.C.*, 270 F.Supp.2d 882, 887 (S.D.Tex.2003); *Mohamed*, 90 F.Supp.2d at 775. In determining whether a particular venue is more convenient to witnesses, the court should inquire into the nature and quality of the witnesses' potential testimony with regard to the issues in dispute rather than limit its investigation to a review of which party can produce the longer witness list. *See Isbell*, 2004 WL 1243153, at * 14; *Holmes*, 270 F.Supp.2d at 887; *see also Barnett v. Kirby Inland Marine, Inc.*, 202 F.Supp.2d 664, 668 (S.D.Tex.2002); *Aquatic Amusement Assocs. Ltd. v. Walt Disney World Co.*, 734 F.Supp. 54, 57 (N.D.N.Y.1990). Courts have " 'uniformly refused to let applications for transfer become a battle of numbers.' " *Woolf*, 176 F.Supp.2d at 650 (quoting *Dupre*, 810 F.Supp. at 826); *accord Fletcher v. Southern Pac. Transp. Co.*, 648 F.Supp. 1400, 1402 (E.D.Tex. 1986).

Along with Vybiral, the key party witnesses are David Corna ("Corna"), John Raykovich ("Raykovich"), Larry Busceme ("Busceme"), Reagan Reed ("Reed"), and Alicia Downy ("Downy"). Corna, a District Manager for Stock, resides in Austin, Texas—in the Western District of Texas. Corna was Vybiral's supervisor during his employment with Stock. Corna has knowledge of Vybiral's duties as a general manager for Stock, the customer relationships Stock maintains in Temple, Vybiral's alleged breach of the employment agreement, his compensation package at Stock, and the alleged damages caused by his departure from the company. Raykovich, the President of Tri–Supply, maintains residences in Beaumont, Texas, and in Westlake, Texas. At deposition, Raykovich testified that he owns homes in both cities but spends the majority of his time

in Westlake, Texas—in the Western District of Texas. He hired Vybiral to work for Tri–Supply and directs his activities on behalf of Tri–Supply. Busceme is the only key witness who resides exclusively in Beaumont, Texas. Busceme is the Director of Human Resources for Tri–Supply. He will purportedly offer testimony refuting Stock's assertion that Vybiral solicited employees to leave Stock and work for Tri–Supply. Reed replaced Vybiral as the location manager at Stock's Temple facility and resides in the Western District of Texas. His testimony will focus on the location of Stock's customer base. Defendant maintains that Reed's testimony is pertinent to the reasonableness of the temporal and geographic limitations contained in the covenant-not-to-compete and whether those restrictions are necessary to protect Stock's goodwill and other business interests. Downy, the Payroll Director for Stock's general partner, lives in Raleigh, North Carolina. Downy will testify about the structure of Stock's bonus program and the actual payments made to Vybiral.

In addition to the key party witnesses, the parties identify a number of potential witnesses who may be called to testify at trial. The majority of the named individuals reside in or within close proximity to Temple, Texas. Most of these potential witnesses are former Stock employees who may now be employed by Tri–Supply. These individuals purportedly have knowledge of relevant facts regarding Vybiral's employment at Stock, including information regarding Stock's customer relationships, which relates to the issue of the reasonableness of the covenant-not-to-compete. Because venue is considered convenient in the district or division where the majority of witnesses are located and the vast majority of the persons listed as witnesses in this case reside in the Western District of Texas, the convenience of the witnesses weighs strongly in favor of a transfer.

Moreover, Temple, Texas, where Vybiral and the most of the witnesses in this case work and/or reside, is approximately thirty-four miles from Waco, Texas. In contrast, Temple is approximately two hundred seventy miles from Beaumont, Texas. Therefore, if venue were maintained in the Eastern District of Texas, most of the witnesses would be required to travel to Beaumont, Texas, and incur travel, food, and lodging expenses for trial. As the Supreme Court noted in *In re Volkswagen AG:*

> When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.

371 F.3d at 204–05; *see also Eliserio,* 388 F.Supp.2d at 777.

■ Overall, the convenience of the parties and witnesses would be served by a transfer of venue. A change of venue to the Western District of Texas would reduce the travel expenses for all the parties and would not simply transfer costs from one party to another. *See McCaskey v. Continental Airlines, Inc.,* 133 F.Supp.2d 514, 528 (S.D.Tex.2001) (finding that reducing total costs and not just transferring costs supports a transfer). If the case remains in Beaumont, Texas, every witness, aside from Busceme and possibly Raykovich, would be required to commute and incur meal and lodging expenses.

### 2. Availability of Compulsory Process

Another factor to be considered is the availability of compulsory process to insure the attendance at trial of unwilling or hostile witnesses. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 511, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *Eliserio*, 388 F.Supp.2d at 776–77; *Hess v. Gray*, 85 F.R.D. 15, 25 (N.D.Ill.1979); *Morgan v. Illinois Cent. R.R. Co.*, 161 F.Supp. 119, 120 (S.D.Tex.1958). In this instance, compulsory process would be available in the Western District of Texas for most of the witnesses, but not in this forum, as almost all the witnesses reside outside the court's 100–mile subpoena range. *See* FED.R.CIV.P. 45(c)(3)(A)(ii); *see also Eliserio*, 388 F.Supp.2d at 777. Stock argues that transferring this case to the Western District of Texas is necessary because, otherwise, many witnesses will be outside the subpoena power of this court. In view of the fact that many of the individuals the parties have identified as potential witnesses at trial are employees of either Stock or Tri–Supply, however, compulsory process may not be needed in this case. Therefore, this factor is neutral with regard to transfer of this action.

### 3. Cost of Obtaining the Attendance of Witnesses and Other Trial Expenses

As previously noted, the vast majority of witnesses with information relevant to this case reside in Temple, Texas, or in close proximity thereto. Thus, the witnesses would incur substantial costs, both in travel expenses and time away from work, in order to travel to Beaumont, Texas, from the Temple area for purposes of a trial. Because Vybiral and most of the persons designated as likely to have pertinent information in this matter are located in the Western District of Texas, reason dictates that the costs of obtaining the attendance of witnesses and other trial expenses would decrease for all parties if this action

were transferred to that district. *See Spiegelberg*, 402 F.Supp.2d at 791. Hence, this factor weighs in favor of a transfer.

### 4. Other Practical Problems and Considerations

#### a. Place of the Alleged Wrong

The place of the alleged wrong is a significant factor in the transfer analysis, and, here, it weighs in favor of a transfer. *See id.; Hanby*, 144 F.Supp.2d at 678; *Houston Trial Reports, Inc.*, 85 F.Supp.2d at 670; *Robertson v. M/V Cape Hunter*, 979 F.Supp. 1105, 1108 (S.D.Tex.1997); *Henderson v. AT & T Corp.*, 918 F.Supp. 1059, 1067 (S.D.Tex.1996); *Dupre*, 810 F.Supp. at 827. In this instance, the Beaumont Division of the Eastern District of Texas lacks a significant connection to the underlying dispute. *See Spiegelberg*, 402 F.Supp.2d at 791; *Hanby*, 144 F.Supp.2d at 678. According to Plaintiffs' petition, most of the alleged misrepresentations regarding the employment contract were made to Vybiral in Temple, Texas, during his employment as General Manager of Stock's mill operation there. The covenant against competition contained in the employment contract restricts Vybiral from "engag[ing] in any business that the Employer currently conducts or enters into during the term of Employee's employment hereunder, within a 100 mile radius of Employer's Temple, Texas branch (the Branch)." The distance contained in the restrictive covenant does not reach the Eastern District of Texas. Thus, the alleged wrongs appear to have occurred primarily in the Western District of Texas, rendering a trial of this action in Waco more appropriate than a trial in Beaumont, Texas. This factor supports a transfer.

#### b. Plaintiffs' Choice of Forum

In determining the propriety of a transfer of venue under § 1404(a), the plaintiffs' choice of forum is not accorded

the decisive weight it enjoyed under the doctrine of *forum non conveniens. See Reyno*, 454 U.S. at 253–56, 102 S.Ct. 252; *Radio Santa Fe, Inc.*, 687 F.Supp. at 287. Today, the choice of forum is "clearly a factor to be considered but in and of itself it is neither conclusive nor determinative." *In re Horseshoe Entm't*, 337 F.3d at 434 (citing *Garner v. Wolfinbarger*, 433 F.2d 117, 119 (5th Cir.1970)); *see Ramos*, 2006 WL 20780, at *2; *Shoemake*, 233 F.Supp.2d at 830–31. Nevertheless, "[t]he plaintiff's choice of forum is normally given deference, especially when the forum is the plaintiff's 'home.'" *Houston Trial Reports, Inc.*, 85 F.Supp.2d at 670; *see also Time, Inc.*, 366 F.2d at 698; *accord Spiegelberg*, 402 F.Supp.2d at 790; *Dearing v. Sigma Chem. Co.*, 1 F.Supp.2d 660, 665 (S.D.Tex.1998); *Henderson*, 918 F.Supp. at 1067–68; *Dupre*, 810 F.Supp. at 828. "'The preference for honoring a plaintiff's choice of forum is simply that, a preference; it is not a right.'" *Isbell*, 2004 WL 1243153, at *16 (quoting *E.I. Dupont de Nemours & Co. v. Diamond Shamrock Corp.*, 522 F.Supp. 588, 592 (D.Del.1981)); *see also The Whistler Group, Inc. v. PNI Corp.*, Civ. No. 3:03–CV–1536, 2003 WL 22939214, at *6 (N.D.Tex. Dec. 5, 2003).

■ Plaintiffs' choice of forum is accorded less weight when most of the operative facts occurred outside the district. *See Salinas*, 358 F.Supp.2d at 571; *accord Spiegelberg*, 402 F.Supp.2d at 790; *Bolt*, 351 F.Supp.2d at 600; *Isbell*, 2004 WL 1243153, at *13; *Minka Lighting, Inc. v. Trans Globe Imps., Inc.*, Civ. No. 3:02–CV–2538, 2003 WL 21251684, at *4 (N.D.Tex. May 23, 2003); *Shoemake*, 233 F.Supp.2d at 831; *Hanby*, 144 F.Supp.2d at 677. When the chosen district has little factual nexus to the case, the plaintiffs' choice of forum is accorded less deference if other factors weigh in favor of a transfer. *See Spiegelberg*, 402 F.Supp.2d at 790; *Isbell*, 2004 WL 1243153, at *16; *Shoemake*, 233 F.Supp.2d at 830–31; *Con-*

*way v. Lenzing Aktiengesellschaft*, 222 F.Supp.2d 833, 834 (E.D.Tex.2002); *Hanby*, 144 F.Supp.2d at 677; *Robertson*, 42 F.Supp.2d at 656.

■ Although Plaintiffs argue that their chosen forum in the Eastern District of Texas is proper, Plaintiffs' choice of venue is not controlling in light of the substantial factors that favor a transfer of this case to the Western District of Texas. *See Horseshoe Entm't*, 337 F.3d at 434; *Spiegelberg*, 402 F.Supp.2d at 790; *Isbell*, 2004 WL 1243153, at *16; *Shoemake*, 233 F.Supp.2d at 830–31; *Hanby*, 144 F.Supp.2d at 677; *Robertson*, 42 F.Supp.2d at 656. The pleadings in this case and the submissions of the parties reflect that most of the acts giving rise to Plaintiffs' claims arose in the Western District of Texas, where Vybiral resides and his employment contract was executed and performed. Plaintiffs' chosen venue has only a minimal factual nexus to the case. Under these circumstances, Plaintiffs' chosen forum need not be afforded great deference. *See Spiegelberg*, 402 F.Supp.2d at 790; *Hernandez v. Graebel Van Lines*, 761 F.Supp. 983, 990–91 (E.D.N.Y.1991); *General Accident Ins. Co. v. Travelers Corp.*, 666 F.Supp. 1203, 1206 (N.D.Ill.1987).

### c. *Possibility of Delay and Prejudice if Case is Transferred*

■ One practical problem to be considered with regard to a transfer of venue is the possibility of delay because "'[a] prompt trial ... is not without relevance to the convenience of parties and witnesses and the interest of justice.'" *Dupre*, 810 F.Supp. at 827 (quoting *Fannin v. Jones*, 229 F.2d 368, 369–70 (6th Cir.), *cert. denied*, 351 U.S. 938, 76 S.Ct. 834, 100 L.Ed. 1465 (1956)); *accord Houston Trial Reports, Inc.*, 85 F.Supp.2d at 671–72. In *In re Horseshoe Entertainment*, the Fifth Circuit "recognize[d] that in rare and spe-

cial circumstances a factor of 'delay' or of 'prejudice' might be relevant in deciding the propriety of transfer, but only if such circumstances are established by clear and convincing evidence." 337 F.3d at 434; *see also Spiegelberg,* 402 F.Supp.2d at 792; *Shoemake,* 233 F.Supp.2d at 834–35.

The record reflects that Plaintiffs' original state court petition was filed on December 14, 2005. Five days later, Defendant removed the case to federal court and filed its motion to transfer venue. Under the scheduling order in force in this case, the deadlines for the parties to join new parties, amend pleadings, designate expert witnesses, complete discovery, file motions, file a joint pretrial order, and commence trial of this action extend well into the future. Indeed, the deadline for completion of discovery is June 30, 2006, more than four months from the date of this order, and the docket call in this case is set for January 7, 2007. Much work remains to be done before this case can proceed to trial, including discovery and motion practice. *See The Whistler Group, Inc.,* 2003 WL 22939214, at *6. The courts in the Western District of Texas should be able to configure a similar schedule without causing any substantial delay in this proceeding. Hence, this factor does not militate against the transfer of this action.

Accordingly, the totality of the private interests factors weigh in favor of transferring this case to the Western District of Texas, Waco Division.

### D. *Public Interest Factors*

#### 1. *Administrative Difficulties Flowing from Court Congestion*

In addition to private interest considerations, the court must also consider public interest factors in determining whether a case should be transferred. *See Gilbert,* 330 U.S. at 508, 67 S.Ct. 839; *In re Volkswagen AG,* 371 F.3d at 203; *Purdy,* 356 F.Supp.2d at 659. One element to

be considered stems from the administrative difficulties that arise when courts become congested with litigation that should have been handled at its place of origin. *See Gilbert,* 330 U.S. at 508, 67 S.Ct. 839; *Langton,* 282 F.Supp.2d at 511; *Mohamed,* 90 F.Supp.2d at 766; *Rock Bit Int'l, Inc. v. Smith Int'l, Inc.,* 957 F.Supp. 843, 844 (E.D.Tex.1997). The efficient administration of the court system is vital to all litigants, as well as the public at large. *See Ferens v. John Deere Co.,* 494 U.S. 516, 529, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990). Statistics maintained by the Administrative Office of the United States Courts reflect that there is no significant difference in the number of pending civil cases between the two courts in question. Although the Eastern District of Texas presently has a slightly shorter median time between filing and trial when compared to the Western District of Texas, courts should not retain cases based on the speed of disposition alone, particularly when a dispute has scant relationship to this district. *See Rock Bit Int'l, Inc.,* 957 F.Supp. at 844. Accordingly, this factor is accorded little weight in the transfer analysis.

#### 2. *Local Interest in Having Localized Disputes Decided at Home*

Another element to be considered is the local interest in having localized controversies decided at home. *See Gilbert,* 330 U.S. at 509, 67 S.Ct. 839; *In re Volkswagen AG,* 371 F.3d at 203; *Spiegelberg,* 402 F.Supp.2d at 792; *Purdy,* 356 F.Supp.2d at 659. This public interest factor favors a transfer, as Vybiral resides in the Western District of Texas and the majority of the events giving rise to this action occurred there.

Additionally, it is contrary to the public interest to encumber the citizens of this district with a case that has only a slight

connection to, and little impact upon, the local community. *See In re Volkswagen AG,* 371 F.3d at 206; *Spiegelberg,* 402 F.Supp.2d at 792; *Shoemake,* 233 F.Supp.2d at 835; *Hanby,* 144 F.Supp.2d at 679. "Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gilbert,* 330 U.S. at 508–09, 67 S.Ct. 839; *see In re Volkswagen AG,* 371 F.3d at 206; *Mohamed,* 90 F.Supp.2d at 766. Accordingly, it is more appropriate to impose the burden of jury duty on citizens of the Western District of Texas than on persons residing in the Eastern District of Texas, as the Western District has a strong local interest in businesses operating in that forum and the employees who work there, while the Eastern District has no similar interest. *See Spiegelberg,* 402 F.Supp.2d at 792; *Shoemake,* 233 F.Supp.2d at 835; *Hanby,* 144 F.Supp.2d at 679; *see also Gilbert,* 330 U.S. at 508–09, 67 S.Ct. 839; *In re Volkswagen AG,* 371 F.3d at 206; *Robertson,* 42 F.Supp.2d at 659. Thus, adjudicating this matter in the Western District of Texas would unburden a community with no strong local interest in this matter and would alleviate the concern of encumbering citizens of an unaffected forum with jury duty. *See In re Volkswagen AG,* 371 F.3d at 206; *Shoemake,* 233 F.Supp.2d at 835; *Hanby,* 144 F.Supp.2d at 679; *Robertson,* 42 F.Supp.2d at 659; *Dupre,* 810 F.Supp. at 827.

### 3. *Familiarity of the Forum with the Law and Avoidance of Unnecessary Problems of Conflict of Laws*

There is no conflict of law problem presented, as both of the courts at issue are located in the same state and are governed by the same law. As such, this factor has no bearing on the transfer analysis.

Hence, on balance, the public interest factors favor a transfer of this case to the Western District of Texas, Waco Division.

### III. *Conclusion*

It is apparent from the original petition that the amount in controversy can reasonably be construed to exceed $75,000.00 and that there is complete diversity between the parties. Plaintiffs have not shown to a "legal certainty" that the amount in controversy is below the jurisdictional minimum. Therefore, the removal of this case was proper, as it falls within this court's diversity jurisdiction, and remand is not warranted. Accordingly, Plaintiffs' Motion to Remand is DENIED.

Further, Plaintiffs do not contend that they would be denied a fair trial in the Western District of Texas. In the absence of such a concern, Defendant has met its burden to show that a balance of the relevant factors and circumstances substantially favors a trial in the Western District of Texas. Venue is proper in the Western District because that is where Vybiral and most of the witnesses reside, where Tri–Supply's and Stock's door mill operations are located, and where a substantial part of the events, as well as the alleged acts and omissions giving rise to Plaintiffs' claims, occurred. Hence, the convenience of the parties and witnesses, along with the interest of justice, would best be served by transferring this case to the Western District of Texas, Waco Division. Accordingly, Defendant's motion to transfer venue is GRANTED.